[Civ. No. 56099. Second Dist., Div. Four. May 16, 1980.]

In re the Marriage of LJUBICA and NORMAN CAMIRE.
LJUBICA CAMIRE, Respondent, v.
NORMAN CAMIRE, Appellant.

## COUNSEL

James A. Broderick, Jr., and Camilla L. Broderick for Appellant.

Mazirow, Schneider, Forer & Lawrence and Gary S. Greenberg for Respondent.

## OPINION

**JEFFERSON (Bernard), J.\***—In this action petitioner Ljubica Camire sought dissolution of her marriage to respondent Norman Camire. The parties were married for almost five years, from 1972 to 1977; there were no children. The matter was contested, primarily with respect to ownership of the marital residence. Ljubica was awarded an interlocutory judgment of dissolution, the marital residence as her sole and separate property, and two years of spousal support. Norman has appealed from certain provisions of the interlocutory judgment; we affirm that judgment.

---

\*Assigned by the Chairperson of the Judicial Council.

I

*The Marital Residence*

 Norman challenges the trial court's determination that the marital residence, located at 740 North Stanley, Hollywood, was acquired by Ljubica as a gift from her brother during the marriage, and, therefore, was her separate property. The evidence adduced at trial established that Ljubica came to the United States in 1970 from Yugoslavia, and lived with her brother and sister-in-law, Jon and Kathleen Acevski, until her marriage to Norman in 1972. Ljubica had the equivalent of a high school education while Norman was an engineer. Norman handled family finances and all business transactions during the marriage.

In 1973, shortly after the marriage, Ljubica and Norman moved into the home on Stanley. The property was owned by the Acevskis, who had moved to London, England. Ljubica and Norman made some improvements to the property—items such as painting, renovating the bathroom and the yard. They also commenced making payments on the three trust deeds outstanding on the property, payments totalling approximately $300 per month. In 1974, Jon Acevski offered to sell the property to Ljubica and Norman for the price he had paid for the property in 1968; he suggested that the Camires obtain financing for the property.

Ljubica and Norman attempted to secure a loan secured by a mortgage, but were unable to do so because Norman was out of work. Ljubica became employed in 1974, and turned her paycheck over to Norman for community living expenses. In 1975, Jon Acevski offered to give the Stanley property to his sister, Ljubica. Acevski testified at trial that he knew his brother-in-law, Norman, was out of work; he stated in his testimony: "Well, you know, I discussed obviously with my wife, and we came to the conclusion at the time Mr. Camire wasn't working and my sister needed a place to live, and it would be nice thing to do to leave the house to my sister." Acevski also testified that he told Norman in a telephone conversation that "I will leave the house to my sister and you can live in there."

Norman made arrangements to have a tax consultant draw up a quitclaim deed from the Acevskis, as joint tenants to the Camires, as joint

tenants. None of the parties—the Acevskis or the Camires—had any real understanding of the meaning of the transaction as creating particular types of interests in the property. The Acevskis signed a quitclaim deed to the property and forwarded it to Norman in December 1975, and Norman caused it to be recorded at that time. He and Ljubica also assumed payments on the property.

The property was worth about $28,000 when originally purchased by the Acevskis; at the time of separation of Ljubica and Norman, the estimate of market value was at least $70,000. At no time did any money pass from the Camires to the Acevskis, although Norman, who eventually had obtained employment, testified at trial that it was always *his* intention to purchase the house from the Acevskis or, at least, to give them some funds in return for their conveyance. At trial, Norman advanced the contention that he and Ljubica had acquired the property as their community property.

■ Norman relies on Civil Code section 5110, which creates a presumption that a single family residence acquired by a husband and wife as joint tenants during the marriage is community property. In *Estate of Murphy* (1976) 15 Cal.3d 907 [126 Cal.Rptr. 820, 544 P.2d 956], our high court announced the principle that this presumption is one that affects the burden of proof, with the consequence that the burden is on the party asserting its separate character to rebut the presumed fact that the property is held as community property by a preponderance of the evidence. This presumption was also explained in *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 455 [152 Cal.Rptr. 668], in the following language: "This presumption is rebuttable [citation], and it may be overcome by a preponderance of evidence. [Citation.] Whether or not the presumption has been rebutted is a question of fact for the trial court [citation] and its findings must be upheld if supported by substantial evidence. [Citation.] The form of the instrument under which the parties hold title is not conclusive of the status of the property. [Citation.]"

■ The *Murphy* court, *supra*, stated that, generally speaking, there are two methods for a party to rebut this community property presumption by carrying the burden of proving that the property is separate property rather than community in nature. One method is by directly tracing the asset to a separate property source. The second method most commonly seen is the presentation of proof that, at the time of acquisi-

tion of the property by a married couple, all community income was exhausted by family expenses.

In the case at bench, the burden of proof was on Ljubica to rebut the presumption of community property flowing from the acquisition of the property by the Camires during their marriage. Ljubica sought to do this by the method indicated in *Murphy* of directly tracing the property to a separate property source—a gift to her from her brother.

Unquestionably, the evidence was conflicting on the issue. Norman introduced evidence that the parties dealt with the property after acquisition as their community property. Norman specifically argues that the "secret intention" of Ljubica to regard the property as her separate property cannot prevail over the overt actions of the parties to define the character of the house at 740 North Stanley.

It is true that there was no evidence presented as to Ljubica's intent concerning the property while the parties were living together; at best it could be said that her inaction in expressing an opinion about ownership was not crucial in the trial court's determination of the matter. Ljubica, as a relative newcomer to the United States and from a culture where husbands ordinarily handled family financial matters, understandably allowed Norman to handle the real property transaction. It was Norman, therefore, who decided how title was to be held and who recorded the deed to the house which showed title in both names. Contrasted with these circumstances was the testimony of Jon Acevski which was specific, and obviously believed by the trial judge, that Norman knew it was the intention of the Acevskis to give the house to Ljubica when they executed a deed to Ljubica and Norman in their joint names.

"'The finding of a trial court that property is either separate or community in character is binding and conclusive on the appellate court if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences;...'" (*Beam* v. *Bank of America* (1971) 6 Cal.3d 12, 25 [98 Cal.Rptr. 137, 490 P.2d 257].) We cannot say that the trial court's determination here, that the Acevskis intended a *gift* to Ljubica was without support in the evidence adduced below.

Since the property was a gift to petitioner after marriage, the provisions of Civil Code section 5107 became applicable. This section pro-

vides, in pertinent part, that "[a]ll property of the wife...acquired... by gift...is her separate property." Thus, we conclude that the trial court did not commit error in awarding the property to Ljubica as her separate property.

## II

### *Contributions by the Community*

It was uncontroverted below that, from September 1973 to September 1977, the parties paid, from their community earnings, the trust deed monthly payments, the taxes and insurance outstanding on the Stanley property. Evidence was adduced which showed that the total monthly outlay for the property was about $300, and that this amount also was approximately the fair rental value of the property. The trial court found that "all community funds used for trust deed payments, taxes, refinancing expenses and improvements on the family residence are the equivalent value of the fair rental value of the premises" and concluded that, therefore, "[t]he community is not entitled to any credit for [such] expenditures." Norman has appealed from this determination, claiming that the community is entitled either to recognition of a certain proportionate share of the Stanley property or reimbursement for the community expenditures made to maintain and improve the marital residence.

It has long been the rule that "[t]he use of community funds to improve the separate property of one spouse does not alter the separate character of the property. [Citation.] In the absence of a contrary agreement, the improvements have the character of the separate property and belong to its owner. [Citation.] If the husband expends community funds for the improvement of his wife's separate property, it is presumed that he has made a gift of the community funds." (*In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 256 [105 Cal.Rptr. 483].) Many other decisions have reiterated this principle of law. (See *Dunn v. Mullan* (1931) 211 Cal. 583 [296 P. 604, 77 A.L.R. 1015]; *Kershman v. Kershman* (1961) 192 Cal.App.2d 18 [13 Cal.Rptr. 288]; *In re Marriage of Warren* (1972) 28 Cal.App.3d 777, 781 [104 Cal. Rptr. 860]—by no means an inclusive list of the authorities.)

The *Jafeman* court saw the rationale for the rule in the circumstance that, at least prior to January 1, 1975, the husband was regarded as the manager of the community (former Civ. Code, § 5127) and this rule of

law was required to protect the wife from diminution of properties under the control of the husband. (See the discussion in *Jafeman, supra,* 29 Cal.App.3d 244, 256.) It is true that, in its present form, Civil Code section 5127 bestows management and control of real property on both spouses. Nevertheless, the traditional rule of law which denies either apportionment or reimbursement for community contribution to a wife's separate property has not been overruled.[1]

We are unable to tell from the trial court's findings whether the *non-reimbursement* principle was applied below, but we apply that principle in our consideration of Norman's contention on this issue. Since reimbursement is precluded by the applicable rule of law discussed herein, we need not determine the propriety of the trial court's determination with respect to the "fair rental value" of the property, as a source of "set-off" to the claim of entitlement to reimbursement to the community.

Norman relies on the recent case of *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d 446, in support of his claim that the community was entitled to share in ownership of the Stanley property (and its dramatic increase in value during the 1970's). But the *Aufmuth* case is clearly distinguishable from the case before us. In *Aufmuth,* the wife received a substantial down payment from her parents which was used by the husband and wife to purchase the marital residence; there was evidence that the parties intended the residence to be community property and had always treated it as such. The husband, an attorney, was the family breadwinner and all the payments on the property were made from his earnings. Under these circumstances, the court traced the wife's separate property interest and allowed the community to claim entitlement to that portion of the property acquired with community funds. In *Aufmuth,* however, it was uncontroverted that the parties *intended* the residence to be community property—not the situation in the case at bench. We conclude that the trial court correctly refused reimbursement of the community here.

---

[1]The early case of *Dunn* v. *Mullan, supra,* also declared that when a spouse utilized *separate* assets for the benefit of the community there was a presumption that such use was intended as a gift to the community. This rule has now been limited in application, particularly when the assets were applied after the separation of the parties (see *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 743-748 [145 Cal.Rptr. 205] and *In re Marriage of Epstein* (1979) 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165]) but the *Dunn* rule with respect to reimbursement for expenditure of community funds to maintain and improve the separate property of a spouse appears still to be the law.

## III

### *Spousal Support*

The trial court awarded Ljubica spousal support of $235 per month for one year, and $135 per month for a second year. Norman contends that this award constituted an abuse of discretion.

We consider the court's observations in *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41]: "Although not unlimited, a trial court's discretion is broad in setting the amount of spousal support to be awarded upon dissolution of marriage. [Citations.] . . ." Noting that in assessing the need for spousal support, a court analyzes the "circumstances of the parties," it was stated in *Morrison* that the term "circumstances" "'includes "practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties."'" (*Id.* at p. 454.)

At the time of trial, Norman was employed as an engineer grossing approximately $2,000 per month, with living expenses accounting for slightly more than half of his net. On the other hand, Ljubica was employed as a garment inspector in a factory, grossing approximately $650 per month, and utilizing practically all of her take-home pay on current living expenses. The trial court may well have felt that, in view of Ljubica's background, age (41), and limited business experience, she did in fact need a modest amount of spousal support for a limited time to make the transition to a wholly self-supporting person. We find no abuse of discretion in the spousal support award.

The judgment is affirmed.

Kingsley, Acting P. J., and McClosky, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.