[No. A029050. First Dist., Div. Four. Mar. 21, 1986.]

In re the Marriage of SHEILA CATHANE PRUITT and
FRANKLIN BROCKWAY GOWDY.
FRANKLIN BROCKWAY GOWDY, Respondent, v.
SHEILA CATHANE PRUITT GOWDY, Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II and IIIB.

## COUNSEL

John E. Waltz and Eileen Ring for Appellant.

Max Gutierrez, Jr. and Brobeck, Phleger & Harrison for Respondent.

## OPINION

**SABRAW, J.**—Sheila Cathane Pruitt Gowdy (wife) appeals from a judgment determining property rights, spousal support and attorney's fees issues as between her and her former husband, Franklin Brockway Gowdy (husband). We affirm in part and reverse in part.

### I.-II.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*See footnote, *ante,* page 1228.

### III. With Three Exceptions, There Is Substantial Evidence to Support the Judgment

#### A. *Disposition of the Family Residence*

In 1976, husband purchased a single family residence in Lafayette with funds from a family inheritance and a bank loan. At the time of the marriage three years later, husband and wife had lived together in the Lafayette house for years. After the marriage, payments on the bank loan were made by automatic deductions from a joint checking account from which wife paid most of the couple's bills. Widely differing valuations regarding the house were asserted at trial by the parties and expert witnesses presented by them.

Discounting wife's testimony that husband had promised all of his separate property not yet paid for would become community property, the court concluded that the house was the separate property of husband. Because the checking account was arguably under the control of wife, the court determined that wife would receive no credit for appreciation or loan pay-down during the 33 months of the marriage based on the presumption a gift was intended and the rule that payments of community funds made for or to improve separate property of a spouse do not result in a change in the status of the property. (*In re Marriage of Camire* (1980) 105 Cal.App.3d 859, 866-867 [164 Cal.Rptr. 667].)

■ Wife contends that *Camire* is inconsistent with binding California Supreme Court precedent, *In re Marriage of Moore* (1980) 28 Cal.3d 366 [168 Cal.Rptr. 662, 618 P.2d 208], which held "[w]here community funds are used to make payments on property purchased by one of the spouses before marriage 'the rule developed through decisions in California gives to the community a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds.'" (*Id.,* at pp. 371-372, citing *Forbes* v. *Forbes* (1953) 118 Cal.App.2d 324, 325 [257 P.2d 721]; *Estate of Neilson* (1962) 57 Cal.2d 733, 744 [22 Cal.Rptr. 1, 371 P.2d 745]; *Bare* v. *Bare* (1967) 256 Cal.App.2d 684, 690 [64 Cal.Rptr. 335]; and *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 257 [105 Cal.Rptr. 483].)

We have reviewed the historical origins of the *Moore* and *Camire* rules and have found a conflict which has never been directly addressed in any published decision in this state, although it has been noted by at least one commentator. Shortly after *Moore* was decided, it was strongly criticized in one widely read family law periodical based on what was perceived as an inconsistency between continued reliance on the pro tanto interest rule

followed in the *Forbes/Neilson/Jafeman* line of cases cited in *Moore* and the much earlier decision in *Estate of La Belle* (1949) 93 Cal.App.2d 538 [209 P.2d 432] which held that where a wife knew of and consented to the husband's expenditure of community funds to *improve* his separate property, the community was entitled to neither reimbursement nor an interest in the property. (4 Cal. Fam. L. Rep. (1980) 1458-1463.) The commentator concluded that the Supreme Court's recent decision in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285], where the court refused to allow a spouse to trace and thereby obtain reimbursement for separate property funds paid to reduce an encumbrance on community property, could not be reconciled with the court's decision in *Moore*. (*Id.*, at pp. 1461-1462.) Reasoning that if a *Lucas* spouse is presumed to have made a gift of separate property to the community in such a circumstance, the commentator questioned the wisdom of permitting a spouse to trace community funds used to reduce the principal on a spouse's separate property in a *Moore* situation.[2]

In order to assess the current state of the law, we review the most recent developments in this area. We start with *In re Marriage of Camire, supra,*

---

[2]"Prior to 1975, the husband was the exclusive manager and controller of the community property. Thus, underlying the cases where community funds were expended on the husband's separate property was the basic rationale that it was a constructive fraud on the community for the husband to expend community funds in this manner, and the community was entitled to 'damages' in the form of reimbursement or an interest. But when the husband spent the money on wife's separate property, he was presumably making a gift of his share of the community funds. On the other hand, when the wife knew of and consented to the expenditure on husband's separate property, it was presumed that by giving her consent, the wife intended to make a gift of her community interest to her husband.

". . . . . . . . . . . . . . . . . . .

"[S]ince the basic rationale underlying the 'improvement' cases was the fiducial obligations of the husband as exclusive manager and controller of the community property, it would seen that the 1975 change of [Civil Code section] 5125 (giving both spouses equal management and control) has obviated the problems presented in those circumstances. On the other hand, these statutory changes should not affect situations in which a gift was presumed because both parties consented to an expenditure of community property (the *La Belle* problem).

"Also, if the 'purchase' cases were grounded on the same theory as the 'expenditure on improvement' cases, which appears to be the case, it follows that the 1975 statutory changes should affect the validity of those cases in the same manner.

"However, because the court based its *Moore* decision on these purchase cases, and failed to discuss the applicability of the rationale of those cases [to] the effects, if any, of the 1975 changes, it is difficult for us attorneys to assess the *Moore* decision's potential impact.

"Why is *Moore* less? Two months ago the [S]upreme [C]ourt said in *Lucas* that when a spouse expends his or her separate funds to purchase a community residence, this is presumed to be a gift to the community unless there is an agreement or understanding to the contrary. Without knowing what *Moore* is founded upon, why then is it not presumed to be a *gift by the community*, absent an agreement or understanding to the contrary, when community funds are voluntarily spent on the purchase of a separate property residence?

"The 1975 statutory change of [Civil Code section] 5125 combined with the *La Belle* theory apparently indicates that when *both* spouses consent to a community expenditure on separate property, it should be presumed a gift." (4 Cal. Fam. L. Rep. *supra*, at p. 1461, italics in original.)

105 Cal.App.3d 859, husband's principal authority in the case before us. Reciting the *La Belle* rule regarding consensual expenditures of community funds for *improvements* to separate property, the *Camire* court held that the community was not entitled to any interest in the separate property of wife (the family residence) *even though community funds had also been used to reduce the encumbrance on the property. (Id.,* at pp. 866-867.) The Court of Appeal noted the *Forbes/Neilson/Jafeman* pro tanto interest rule recited in the most recent decision applying it, *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446 [152 Cal.Rptr. 668] (overruled on other grounds [*In re Marriage of Lucus, supra,* 27 Cal.3d 808, 815]), but attempted to distinguish *Aufmuth* by observing that in *Aufmuth* the parties had intended that the residence be community property as contrasted with the facts in *Camire.* The court did not trace the derivation of the pro tanto interest rule or note that it had any history prior to *Aufmuth.*[3]

Shortly after *Camire,* the Supreme Court decided *In re Marriage of Moore, supra,* 28 Cal.3d 366. In *Moore,* it is significant to note that the parties *stipulated* that the community held a pro tanto interest in the property but, as in *Aufmuth,* disagreed on the formula to be used in determining the interest. The Supreme Court stated that the house was separate property in which the community acquired an interest based on the community fund payments on the purchase loan, citing *Forbes, Jafeman,* and *Neilson,* among others, for the pro tanto interest rule. (*Id.,* at pp. 371-372.) Somewhat surprisingly, the court did not discuss *Camire* or even mention the *La Belle* rule as it was applied in *Camire.*

Following *Moore,* a variation on the *Moore/Aufmuth* formula was adopted by the Court of Appeal to take into account the effect of premarital appreciation of value in a spouse's separate property. In *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426 [181 Cal.Rptr. 910], the court determined that it was only fair for the husband to be given credit for premarital appreciation if the community was to receive a pro tanto interest in the value of the husband's separate property based on the use of community funds to reduce an encumbrance, reversing a trial court decision which did not give

---

[3]The previously cited commentary in 4 California Family Law Report suggested that the *Camire* court's disposition may be explained as an effort to avoid having to deal with the "hot potato issue" of whether the community should be charged rental for use of the property if credit was given the community for principal reductions. (4 Cal. Fam. L. Rep. (1980) 1341-1342.) That commentator also suggested that the *Camire* court's refusal to "adapt to the change in the law created by the equal management and control mandate of [Civil Code section] 5127 works a harsh injustice on [husband]. If the letter of the amendment were adhered to, then a *pro tanto* allocation between separate and community interests under *In re Marriage of Jafeman* (1972) 29 [Cal.App.3d 244] would be the result." (*Id.,* at p. 1343.)

such credit. As with many of the other cases, the court mechanically cited the *Forbes/Neilson/Jafeman* rule that the community was entitled to a pro tanto interest in the separate property. Like the Supreme Court in *Moore,* the *Marsden* court failed to discuss or mention the conflicting *La Belle* rule applied in *Camire.*

In *In re Marriage of Stoner* (1983) 147 Cal.App.3d 858 [195 Cal.Rptr. 351], wife purchased a house with proceeds from the sale of her separate residence and proceeds from a loan which was based on her separate credit, taking title in her own name. At the same time, husband gave wife a quit-claim deed. (Husband was unemployed throughout the marriage and had a poor credit history while wife was a medical doctor, providing some reasons why such a procedure occurred.) Community funds were used to make payments on the purchase loan during the marriage. The trial court concluded that the community was entitled to a 76.1 percent interest in the current value of the property based on the fact that community credit was used to obtain the wife's separate property loan which was used for the purchase. The Court of Appeal reversed, holding that the quitclaim deed was sufficient evidence that a transmutation of husband's community interest in the property had resulted. The court acknowledged that while ordinarily the community would have obtained a pro tanto interest, "the permissive use of community funds to reduce the notes were gifts of husband to wife's separate property." (*Id.,* at p. 864.)

Needless to say, in the case before us, husband relies upon *Stoner* as proof that the rule adopted in *Camire* is still good law, notwithstanding the Supreme Court's subsequent decision in *Moore* which follows the *Forbes/ Neilson/Jafeman/Aufmuth* pro tanto interest rule as to reductions of separate property encumbrances through the use of community funds. *Stoner* does not mention *Camire.* With regard to *Moore,* the *Stoner* court attempted to distinguish it by observing that "*Moore* concerned the proper method of calculating the interest obtained by the community as a result of payments made during marriage on an indebtedness secured by a deed of trust on a residence purchased by one of the parties *before* marriage" (*id.,* at p. 863), the situation in the case before us.

Finally, in 1983, the Legislature overruled the holding of *In re Marriage of Lucus, supra,* 27 Cal.3d 808 by adopting Civil Code section 4800.2.[4] A spouse who permits his or her separate property to be used to reduce an encumbrance on community property can now obtain reimbursement of such

---

[4]Civil Code section 4800.2 provides in relevant part: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source."

amounts upon dissolution of marriage unless a writing expressing the intent to make a gift has been executed. However, while the Legislature has overruled *Lucas,* it has not yet addressed the issue before us.

In light of the foregoing, it would be anomalous for us to hold that a spouse, like appellant wife, who permits community funds to be used to reduce an encumbrance on the other spouse's separate property has fewer rights than a spouse who permits his or her separate property to be used for the same purpose with respect to a community property. In the latter case, even if the spouse signs a writing evidencing a gift to the community of separate property funds, that spouse will still receive one-half of the funds back in the division of community property. By contrast, here wife was denied any interest in husband's separate property based on *Camire,* a decision which clearly contradicts the rationale of the *Forbes/Neilson/Jafeman* pro tanto interest rule followed in *Moore.* Irrespective of what one may think about the continuing validity of that rationale in light of the 1975 amendment of Civil Code section 5125 granting spouses equal control of community property, *Moore* is still binding precedent. We hold, therefore, that the payment of community funds to reduce the encumbrance on husband's separate property, even though done with knowledge and apparent consent of wife, gave the community a pro tanto interest in that separate property in proportion to husband's prior separate property payments on the down payment and loan principal whether premarital or postmarital. (*In re Marriage of Moore, supra,* 28 Cal.3d 366, 371-372.) Accordingly, the judgment must be reversed in this regard in order to award wife her share of the community's *pro tanto* interest in the family residence which the trial court found to be husband's separate property.

## B. *Personal Property Items, Support and Attorney's Fees**

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed, except as to the community property interest in the family residence, the Ford and the promissory note. As to those matters, the judgment is reversed with instructions to enter a new judgment specifying (1) the amount of the community property interest in the residence in conformance with this opinion based on reductions of the encumbrance with community funds, (2) that the 1962 Ford Galaxie was a community property asset, charging husband with wife's $1,000 interest in the

*See footnote, *ante,* page 1228.

auto and (3) recomputing the amount of the promissory note from wife to husband based on the assets and debts distributed to each party.

Anderson, P. J., and Poché, J., concurred.