[No. B143248. Second Dist., Div. Two. Feb. 26, 2002.]

In re the Marriage of JUDITH LORRAINE and THOMAS P. ALLEN.
JUDITH LORRAINE ALLEN, Appellant, v.
THOMAS P. ALLEN, Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

### COUNSEL

Trope and Trope, Thomas Paine Dunlap and Steven Knowles for Appellant Judith Lorraine Allen.

Ronald P. Kaplan for Appellant Thomas P. Allen.

### OPINION

**NOTT, J.**—The question raised by this appeal is whether a wife's consent to the use of community funds to improve her husband's separate real property raises a presumption that the funds were a gift of the funds to the husband. We conclude that it does not. In so holding, we agree with *In re Marriage of Wolfe* (2001) 91 Cal.App.4th 962 [110 Cal.Rptr.2d 921] (*Wolfe*), which recently held that where a wife uses community funds to make improvements to her husband's separate property, the community is entitled to reimbursement of the funds.

#### CONTENTIONS

 Judith Lorraine Allen appeals from a further judgment on reserved issues in a marital dissolution action in which the trial court ruled that community expenditures toward capital improvements on Thomas P. Allen's separate property residence were presumptively a gift to him from the community. Judith contends that the trial court erred in failing to apply the *Moore/Marsden* rule (*In re Marriage of Moore* (1980) 28 Cal.3d 366 [168 Cal.Rptr. 662, 618 P.2d 208] (*Moore*) and *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426 [181 Cal.Rptr. 910] (*Marsden*)) in this case. Judith also asserts that the trial court erred in finding that she consented to the expenditures. Thomas cross-appeals, contending that the trial court abused its discretion in denying his request for attorney fees.

#### PROCEDURAL AND FACTUAL HISTORY

Judith filed her petition for dissolution of marriage in September 1997. The principal disputed issue in the case was whether the family home, which

Thomas owned prior to the marriage, had been transmuted to community property. The trial court bifurcated that issue and heard the matter during September 1998. Thomas contended the property remained his separate property throughout the 16-year marriage. Judith took the position that the property was transmuted to community property either by oral agreement prior to 1985 or by written deed in 1990.[1] On September 30, 1998, the court ruled that the real property had been transmuted to community property on January 1, 1990. It certified the issue for immediate appeal. No appeal was taken.

The remaining issues in the case were then heard. They included child support, attorney fees, and whether the community was entitled to reimbursement or a pro tanto interest in the family residence based upon pre-1990 community contributions to improvements in the home. Judith took the position that approximately $450,000 in community funds had been used improving the family home prior to 1990. Thomas contested both the fact that any community funds had been used and the amount spent on the alleged improvements. The trial court granted Thomas's motion in limine, however, precluding Judith from presenting evidence of the cost of, or value added by, the alleged community-funded improvements. The remaining issues were tried.

The trial court issued a statement of decision on October 21, 1999. It stated in connection with Thomas's in limine motion: "The court finds that it is constrained by the holdings in *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244 [105 Cal.Rptr. 483] and *In re Marriage of Camire* (1980) 105 Cal.App.3d 859 [164 Cal.Rptr. 667], which held that the expenditure of community property funds upon a spouse's separate property residence did not give rise to a claim for reimbursement, because of a presumption that the community had made a gift to the separate property owning spouse. Although both cases predate *In re Marriage of Moore*[, *supra*,] 28 Cal.3d 366 and *In re Marriage of Marsden*[, *supra*,] 130 Cal.App.3d 426, which established that community property paydowns on mortgage principal on a separate property asset give rise to a pro tanto interest in favor of the community, neither *Moore* nor *Marsden* specifically address the issue of improvements, and no reported case has heretofore expanded the *Moore/Marsden* reasoning to include enhancement in value of separate property through capital improvements financed with community funds. The Court believes that *Jafeman* and *Camire* are therefore still controlling in a situation such as the case at bar involving alleged community property funds expended upon improvements to Respondent's residence prior to its transmutation to community

---

[1]Section 852 of the Family Code, which requires that a transmutation of real or personal property be made in writing by an express declaration, does not apply to transmutations made before January 1, 1985. (Fam. Code, § 852, subd. (e).)

property. Therefore, any evidence which Petitioner might present relating to the cost or value of the improvements made upon Respondent's separate property residence from 1983 through 1990 would be irrelevant and Respondent's Motion in Limine was granted on that basis." The trial court found that Judith had consented to the use of any community property funds expended on the residence prior to 1990.

The court ordered Thomas to pay $200,000 toward Judith's attorney fees based upon findings that Thomas had superior ability to make contributions, and that his contesting the validity of a deed placing the family residence in joint ownership required significant attorney work exacerbating the fees and costs incurred in the matter. The court found that Judith's advocating a right of reimbursement or a pro tanto interest in the family home in favor of the community was not so unreasonable as to require that she be sanctioned. The court entered a further judgment on reserved issues on May 19, 2000. Both parties appealed.

The evidence shows the following. Judith and Thomas were married in 1981. They have three children together, born in 1983, 1985, and 1987. Prior to their marriage, in 1977, Thomas purchased a home on The Strand in Hermosa Beach, subject to a life estate in the prior owner. During their marriage, Judith and Thomas cared for the life estate owner, who forgave Thomas's existing mortgage as a testamentary bequest, until her death in 1986. Thomas was committed to restoring the house, and the couple devoted considerable effort and expense toward its restoration and renovation.

Throughout the marriage, the issue of ownership of the residence was a volatile one. In 1982, Thomas stated that he did not intend to place Judith on title to the residence. Judith testified that in 1983, when she was pregnant with their first child, Thomas told her that they owned the home together. She said that Thomas told her in 1984 that he would change title to reflect her equal ownership. Thomas testified that Judith repeatedly brought up the issue, but that he only told her that his estate plan provided for her to remain in the home for the rest of her life, should he predecease her. According to Thomas, title to the residence was to go to their children.

In 1990, Thomas drafted and executed a deed conveying the property to Thomas and Judith in joint tenancy. Thomas told Judith that he had finally executed the deed confirming her interest in the house, which she reviewed. Thomas did not, however, record the deed, and he subsequently destroyed the original and a copy in 1996 or 1997.

Prior to marriage, Judith was a dental hygienist working approximately four days a week. After the birth of their children, Judith devoted herself to

the remodeling project, child rearing, and caring for the life tenant until her death. Thomas remained a successful attorney throughout. Using community assets, Thomas established three irrevocable trusts for the children, with himself as sole trustee. At the time of trial, each trust held assets of approximately $240,000. Judith testified that she agreed to fund the trusts with community assets after she was assured that the family home was joint property, and that she would not have agreed to that use of community funds if she had not believed she had an interest in the house.

The court found that the fair market value of The Strand residence was $1.9 million and that it was not subject to any liens or encumbrances. The court determined the community property interest in the home to be $568,000, based upon the 1990 transmutation.

DISCUSSION

## I. *Judith's appeal*

The trial court found consent based upon Judith's knowledge that the family home was Thomas's separate property. There was no proof, however, that Judith intended the couple's use of community funds to result in a permanent gift to Thomas. To the contrary, her frequent complaints about the manner in which title was held militates strongly against such a conclusion. The present case is not an aberration. A spouse who consents to the use of community funds to improve the other spouse's separate property does not necessarily intend a gift. Few spouses anticipate dissolution of their marriage. The consenting spouse who considers the consequences may well assume that a community share will be reimbursed when the community estate is divided. In this case, the separate property house was also the family home in which Judith believed at the least she had an interest for life. We agree with *Wolfe*, which holds that where community funds are consensually used to improve one spouse's separate property, the community is entitled to reimbursement. (*Wolfe, supra,* 91 Cal.App.4th at p. 972.)[2] Where community funds are used to make capital improvements to a spouse's separate real property, the community is entitled to reimbursement or a pro tanto interest under the *Moore/Marsden* rule both because its rationale applies equally to the reduction of an encumbrance and to capital improvements, and also because the legal underpinnings of the alternative rule, stated in *Dunn v. Mullan* (1931) 211 Cal. 583 [296 P. 604, 77 A.L.R. 1015] (*Dunn*), have been destroyed by intervening changes in family law.

---

[2]This court advised the parties of the *Wolfe* opinion, and afforded counsel an opportunity to address the case during oral argument. Counsel appeared at oral argument and thoroughly analyzed its relevance to the present case.

In *Moore*, a wife acquired a house before the marriage. During the marriage, the spouses made loan payments with community property funds. The court held that the community acquired a pro tanto interest in capital appreciation of the property to the extent the community payments increased the separate property's equity value. (*Moore, supra,* 28 Cal.3d at pp. 373-374.) *Marsden* applied the formula to a husband's separate real property, giving him credit for premarital appreciation. (*Marsden, supra,* 130 Cal.App.3d at pp. 438-440.) This rule is applied without regard to consent. (See *Marriage of Gowdy* (1986) 178 Cal.App.3d 1228, 1234 [224 Cal.Rptr. 400] (*Gowdy*).)

*Moore, supra,* 28 Cal.3d at page 372, dealt with payments made to reduce an encumbrance on separate property. It did not deal with and did not address whether the same rule would apply to community contributions to improve separate property. The *Moore/Marsden* rule is based upon the principle that where community funds contribute to the owner's equity in separate property, the community obtains a pro tanto quasi-ownership stake in the property. For that reason, community payments made for taxes, interest, and maintenance are not subject to the rule. (*Moore, supra,* 28 Cal.3d at p. 372.) Because contributions to capital improvements also increase the property's equity value, *Moore*'s rationale applies as well to capital improvements made to separate property.

A second rule, developed prior to the 1973-1975 family law changes giving the wife equal control of community assets (see Fam. Code, §§ 1100, 1102), has been applied to community property improvements to separate property. It reflects a concern that the husband in control of the community estate will take advantage of his wife. (*Estate of La Belle* (1949) 93 Cal.App.2d 538, 544 [209 P.2d 432].) Under this rule, a husband's voluntary improvement of his wife's separate property with community funds is treated as a gift to her absent evidence to the contrary; if the husband improves his own separate property with community funds, however, the wife's silence is not considered consent, and she is entitled to compensation. (See 11 Witkin, Summary of Cal. Law (9th ed. 1990) Community Property, § 84, pp. 477-479.) In *Dunn*, community funds were used to improve a wife's separate real property and to relieve it of an encumbrance. The court stated, "it may be presumed that, if a husband expended community funds for the benefit of his wife's separate property he intended, in the absence of any evidence of a contrary intent, such improvements or benefits to be a gift, and that he made such expenditures without expectation of repayment." (*Dunn, supra,* 211 Cal. at p. 590.) Where the husband applied community funds to benefit his separate property, the community was entitled to reimbursement. (See *Estate of Chandler* (1931) 112 Cal.App. 601, 604 [297 P.

636]; see also *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 259 [105 Cal.Rptr. 483] [applying the *Dunn* rule where community funds were used to improve husband's separate property].)

The distinction between community contributions toward reducing an encumbrance and toward capital improvements, however, is neither self-evident nor consistently recognized. Family Code section 2640, which authorizes reimbursement for separate property contributions to the acquisition of community property unless a writing expressing the intent to make a gift has been executed, includes "payments for improvements" in its definition of " '[c]ontributions to the acquisition of the property.' " (Fam. Code, § 2640, subd. (a); see *Wolfe, supra*, 91 Cal.App.4th at p. 967.)[3] To paraphrase *Gowdy*, which followed *Moore*, it would be anomalous to hold that a spouse who permits community funds to be used to improve the other spouse's separate property has fewer rights than a spouse who permits his or her separate property to be used for the same purpose with respect to a community property. (See *Gowdy, supra*, 178 Cal.App.3d at p. 1234.)

Moreover, the distinction between purchase and improvement has not been consistently applied by the courts. For example, *Estate of Neilson* (1962) 57 Cal.2d 733, 744 [22 Cal.Rptr. 1, 371 P.2d 745] (*Neilson*), upon which *Moore* relied, states that the jury had no choice but to "apportion the property according to the extent that separate and community funds contributed to the various purchase prices and improvements" under the pro tanto community property rule. (*Neilson, supra*, 57 Cal.2d at p. 744.) *Garten v. Garten* (1956) 140 Cal.App.2d 489, 494 [295 P.2d 23], cited by *Thomas*, also states that any community funds paid toward either completion of a house or on an encumbrance would give the community a pro tanto interest in the property. *Dunn* involved community funds used both to reduce an encumbrance and to improve real property (*Dunn, supra*, 211 Cal. at p. 590), and drew no distinction between the two. The same is true of *In re Marriage of Camire* (1980) 105 Cal.App.3d 859, 866-867 [164 Cal.Rptr. 667] (*Camire*), which is discussed below.

Family law changes in the early 1970's, which gave both spouses equal power to control community property, removed the underpinnings of the *Dunn* line of cases. Although it acknowledged those changes, *Camire* nevertheless applied the *Dunn* rule where community funds were used to make

---

[3]Subdivision (b) of section 2640 of the Family Code provides: "In the division of the community estate under this division unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source." (Fam. Code, § 2640, subd. (b).)

trust deed payments and to pay for improvements to the wife's separate property. (*Camire, supra,* 105 Cal.App.3d at p. 867.)[4] *In re Marriage of Frick* (1986) 181 Cal.App.3d 997 [226 Cal.Rptr. 766] also acknowledged the changes. It states in dictum that where community funds are used to improve separate property, however, both spouses hold the position of a husband under the *Dunn* rule. (*Id.* at p. 1019.) The court denied reimbursement upon the ground that the wife had failed to support her contention that the husband used community funds to improve his separate property. (*Id.* at p. 1020.) Contrary to *Camire* and *Frick,* we conclude that changes in the law since *Dunn* establish a different rule. (See *Lane & Pyron v. Gibbs* (1968) 266 Cal.App.2d 61, 66 [71 Cal.Rptr. 817] [statutory change regarding presumption undermined rule of Supreme Court decisions].) Adherence to a presumption based upon the husband's control of community property is inappropriate once control has been placed in the hands of both spouses.

*Wolfe* notes that our Supreme Court has never adopted the gift presumption as a rule of decision in any case. (*Wolfe, supra,* 91 Cal.App.4th at p. 972.)[5] As *Wolfe* also discusses, applying a gift presumption to marital property is inconsistent with public policy, which presumes acquisitions during a marriage are community. (*Id.* at p. 967; see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 289-290 [39 Cal.Rptr.2d 673]; Fam. Code, § 760.) *Wolfe* points out that California courts do not presume a gift when community funds are contributed to purchase a separate asset or to reduce an encumbrance on a separate asset. (*Wolfe, supra,* at p. 972; see *Moore, supra,* 28 Cal.3d 366; *In re Marriage of Branco* (1996) 47 Cal.App.4th 1621, 1627 [55 Cal.Rptr.2d 493] [*Moore* applies to community loan used to pay off mortgage on separate property].)

The Legislature has acknowledged the need for formality in connection with the character of marital property. Since January 1985, adherence to statutory formalities, including a writing, has been required for transmutation. (Fam. Code, § 852; see *Estate of MacDonald* (1990) 51 Cal.3d 262, 268-269 [272 Cal.Rptr. 153, 794 P.2d 911] (*MacDonald*).) In making this change, the Legislature sought to avoid the consequences of recognizing transmutation by informal agreement, including extensive litigation in dissolution proceedings and encouragement of perjury. (*MacDonald, supra,* 51 Cal.3d at p. 269.) The *Moore/Marsden* rule better reflects the expectations of marital parties and avoids the problems identified in *MacDonald.*

---

[4]*Camire* was decided shortly before *Moore. Moore* discusses neither *Camire* nor the *Dunn* rule.

[5]The *Dunn* rule can be seen as dictum, since *Dunn* also held that in any event quiet title was not the proper action for a determination of whether marital community was entitled to reimbursement for expenditure of community funds in improving the wife's separate property. (*Dunn, supra,* 211 Cal. at p. 592.)

It is premature, however, to address the issue of the proper measure of the community's reimbursement rights or pro tanto interest in the present case. Because the trial court excluded evidence on the issue, it made no findings regarding the contested issues of whether community funds were in fact expended for improvements to the family residence prior to 1990 and, if so, the amount of any expenditures. Nor did it allow evidence on the issue of increase in value attributable to such expenditures. This is a difficult and complex issue, which we decline to address in a vacuum. While we do not believe the difficulty in calculating damages requires a different result (see *Neilson, supra,* 57 Cal.2d at p. 741), we remand for further factual development.

In light of our holding on the preceding issue, we need not reach Judith's further contention that the trial court erred by finding that she consented to the use of community funds to improve the home.

II. *Thomas's appeal*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

That portion of the further judgment dealing with The Strand residence is reversed with directions to the trial court to ascertain and dispose of any additional community interest therein. The further judgment is affirmed in all other respects. Judith is awarded her costs on appeal.

Boren, P. J., and Doi Todd, J., concurred.

---

[*]See footnote, *ante*, page 497.