Filed 3/27/26  Marriage of Ubamos CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of JOJIT and MARYANN UBAMOS. | |
| JOJIT UBAMOS, <br><br>     Petitioner and Appellant, <br><br> v. <br><br> MARYANN UBAMOS, <br><br>     Respondent. | A172775 <br><br> (San Mateo County Super. Ct. No. 20-FAM-01324) |

This appeal arises from a judgment of dissolution entered after trial. For clarity, we refer to the parties by their given names.  Jojit argues the trial court (1) violated his due process rights by preventing him from introducing video evidence at trial; (2) erred in enforcing the interspousal transfer deed he signed for a house purchased by Maryann; (3) made domestic violence findings not supported by substantial evidence; and (4) erred in the effective date it set for retroactive modification of temporary spousal support to $0.  We affirm the judgment.

## BACKGROUND

### *The Petition and Temporary Spousal Support*

Jojit filed a petition for dissolution of the marriage in 2020.  The parties had been married for approximately 26 years and have two adult children.

Jojit filed a request for order seeking temporary spousal support. The trial court granted the request on February 9, 2021, setting temporary support at $3,727 per month (effectively $3,227 because of a $500 per month credit) as of February 1, 2021, with payments retroactive to August 1, 2020 at a somewhat higher level. Then at a conference on February 26, 2021, the court reserved jurisdiction retroactively to modify temporary support and set a trial date to determine whether Jojit had committed domestic violence against Maryann, and the potential impact on spousal support.

***The 2021 Court Trial***

On September 1, 2021, the trial court heard evidence regarding the alleged domestic violence committed by Jojit. Maryann testified that, when their children were young, Jojit punched her in the face multiple times, broke a plastic bottle over her head, and verbally abused her by calling her names. She testified that, more recently, Jojit had grabbed her by the hair and yelled at her. She also testified that Jojit had verbally abused the children when they were young and as adults.

The parties' daughter testified that, over the course of her childhood, she had witnessed Jojit hit Maryann repeatedly, kick her forehead, throw a beer can at her, drag her down the hallway by her hair, shove her, and call her names. The daughter also testified that she herself had been a target; Jojit had hit her on the face approximately five times, including incidents that split her lip open and left a scar, and yelled at her and called her names.

The parties' son testified that he recently saw Jojit push his body on Maryann, yell at her, and call her names. When the son tried to intervene, Jojit grabbed his collar, pushed him against the wall, and in wrestling with him threw him down. The son testified that, as a child, he saw Jojit grab

2

Maryann's hair, hit her with a closed fist causing her to bleed down her forehead, yell at her, and call her names.

Jojit's counsel recalled Maryann to testify during his presentation of evidence. On redirect, Jojit's counsel sought to introduce video evidence for impeachment purposes. Maryann's counsel objected that the video had not been disclosed and the California Rules of Court (rule 2.1040) required a transcript of the video. Jojit's counsel asked for a ten-minute recess. The trial court declined the request, stating Jojit could "testify to whatever he would like" and counsel could "go ahead and try to prepare your transcript by the end of the day and have [Jojit] present it at some point during his examination." Jojit testified, but counsel did not make any further attempt to introduce the video.

At the conclusion of the presentation, the court issued an order finding domestic violence pursuant to Family Code section 4320, subdivision (i).[1] The court was "persuaded that there is reasonable cause to find by a preponderance of the evidence that Petitioner Jojit Ubamos committed domestic violence throughout the parties' marriage" against Maryann and the parties' two children. The court found the testimony of the daughter "to be particularly persuasive as to the type and ongoing nature of the domestic violence by Jojit, including physical violence throughout her childhood." It also found the son had "provided corroborating testimony of a recent act of domestic violence" against Maryann.

---

[1] Further undesignated statutory references are to the Family Code and all further undesignated citations to Rules are to the California Rules of Court.

Section 4320 lists several factors a court must consider in ordering spousal support, including a judicial finding during the pendency of a divorce proceeding that the spouse has committed domestic violence. (*Id.*, subd. (i)(5).)

The court reserved the issue of "impact that its finding of domestic violence has on temporary spousal support, pending review of all [section] 4320 factors." Its prior order of temporary spousal support would remain in effect, but Jojit was "on notice" that if there was a reallocation, he "could be responsible for repayment of a substantial sum of temporary spousal support."

***The 2023 Court Trial***

The trial on remaining issues, including Maryann's request for reimbursement of temporary spousal support and enforcement of an interspousal transfer deed, was set for one day. The first half-day was conducted on August 16, 2023. Maryann and her forensic accounting expert testified. Jojit appeared in pro per and cross-examined both witnesses.

Maryann testified that she had purchased a house in 2018 and obtained a grant deed and an interspousal transfer deed, holding title of the house in her name alone. She further testified that she did nothing to pressure Jojit into signing the interspousal transfer deed, that he knows how to read, and that he had an opportunity to think about signing the interspousal transfer deed before he did.

The second half-day of trial was continued to June 11, 2024. Jojit did not appear. The court proceeded with the trial, finding a proof of service showed Jojit had been given notice of the trial date. Maryann resumed her testimony, stating she and Jojit had discussed that the property would be solely in her name and she would be solely responsible for the mortgage payments. She also testified that Jojit had never lived at the house.

At the conclusion of her presentation, Maryann's counsel clarified that her request for reimbursement of temporary spousal support was being made back to February 9, 2021 (the date support was originally granted) or, in the

4

alternative, back to September 1, 2021 (the date of the domestic violence finding). The court took the matter under submission.

Approximately one month later, Jojit filed a motion for further trial pursuant to Code of Civil Procedure section 657 (a provision setting forth several "causes" for further trial "materially affecting the substantial rights" of the aggrieved party). The motion was denied.

The court issued a written ruling on October 21, 2024 as a "courtesy" to "fully explain" its rationale, since a statement of decision was neither required nor requested by the parties. (Rule 3.1590(n) [statement of decision must be requested before matter is submitted when trial is completed in less than eight hours].) After weighing the section 4320 factors, the court set permanent spousal support at $0.

The court retroactively modified temporary spousal support to $0 effective July 1, 2023. And for the period from September 1, 2021 (the date of the domestic violence finding) to June 30, 2023 (when Jojit obtained employment), it retroactively modified the rate of temporary spousal support to $1,000 per month. The court reasoned such modification balanced the "purpose" of temporary spousal support, its domestic violence finding, Maryann's "high earning" income, and Jojit's "lower" income. While the court "agree[d] with the general public policy that a victim should not have to finance her abuser," it further explained there was no criminal conviction in this case and there was evidence Jojit had "periods of unemployment and disability." The court thus deemed "some amount of temporary spousal support appropriate, albeit at a reduced amount in light of the abuse."

As to the house purchased by Maryann, the court found she had met her burden of showing by a preponderance of the evidence that the interspousal deed was valid. The court explained that, where an interspousal

5

transaction advantages one spouse, as it did here, there is a presumption of undue influence that shifts the burden to the advantaged spouse to establish the transmutation was lawful.  The advantaged spouse must prove that the interspousal transfer was " 'freely and voluntarily made, with a full knowledge of all the facts and with a complete understanding of the transfer,' " the court correctly noted (citing *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 631, 632), and Maryann had met this burden.  The court reasoned:  "Not only was her testimony sufficient in showing [Jojit] knew what he was signing, but her credible testimony regarding her fear of [Jojit] in light of the domestic violence she suffered lends further support that she would not have wanted to mislead him."  The court awarded the house as Maryann's sole and separate property.  The statement of decision adds that Jojit "may have had the right of reimbursement for any community property used to pay for the house during marriage," but he had failed to raise the issue or present evidence on it, effectively waiving any such right.

The judgment of dissolution was entered on December 27, 2024, attaching the October 21, 2024 ruling and fully incorporating it by reference into the judgment "as if stated herein."

## DISCUSSION

### I.  Due Process

Jojit argues the trial court violated his due process rights because he was prevented from introducing video evidence at trial without a transcript. Rule 2.1040(b)(1) requires that, before a party may present or offer an electronic sound-and-video recording into evidence, the party "must provide to the court and to opposing parties a transcript of the electronic recording and provide opposing parties with a duplicate of the electronic recording." Courts are afforded some discretion on this transcript requirement:  they

6

may, for example, order that a transcript is not required for good cause. (Rule 2.1040(b)(3)(C).) But Jojit offers no authority suggesting the trial court's decision here—not to exercise any such discretion, noting counsel still had the opportunity to prepare a transcript for presentation during his examination of Jojit—constitutes a due process violation.

*In re Marriage of Gilbert-Valencia & McEachen* (2023) 98 Cal.App.5th 520 is not on point. In that case, the trial court improperly excluded a videotape of domestic violence from a dissolution proceeding, stating it was " 'not going to have a domestic violence hearing' " because the " 'purpose' " of the proceeding was to resolve remaining property issues, spousal support, and attorney fees. (*Id.* at p. 528.) That is not what happened here, where the trial court simply enforced the requirements of rule 2.1040. Nor is Evidence Code section 1401 relevant to Jojit's attempt to introduce video evidence, as that provision relates to *authentication* of a writing. Rule 2.1040 does not concern authentication, but is instead "designed to ensure that, in the event of an appeal, there is an appropriate record of any electronic sound or sound-and-video recording that was presented or offered into evidence in the trial court." (Advisory Com. com., rule 2.1040.)

Jojit also argues the trial court's "subsequent actions" violated his due process rights by limiting his ability to present the video. To the extent this argument refers to the trial that proceeded on June 11, 2024, we reject it because Jojit failed to appear on this trial date and does not dispute the court's finding that he was given notice of the date. To the extent this argument refers to the denial of Jojit's motion for further trial, we have no means to review that ruling as neither the motion nor the hearing transcript is contained in the appellate record. Any such argument is thus forfeited. (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 [appellant bears

7

burden of proof on appeal and failure to provide sufficient record results in waiver of issues].)

## II.  Interspousal Transfer Deed

Jojit argues the trial court erred in enforcing the interspousal transfer deed for two reasons.  First, he suggests the trial court did not properly consider the presumption of undue influence.  That suggestion is belied by the record.  In its October 21, 2024 ruling, the court explicitly determined that the presumption applied here because the interspousal transaction "clearly advantages" Maryann, and thus shifted the burden to her to show Jojit had "freely, voluntarily, and knowingly signed the interspousal transfer deed."  It cited the correct legal standard from *In re Marriage of Mathews*, *supra*, 133 Cal.App.4th at pages 628–629, 631 and, after considering the evidence presented, found Maryann had met this burden.

Second, Jojit argues that this finding was not supported by substantial evidence.  " 'Under [the substantial evidence] standard of review, "the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." [Citation.] In so doing, we accept all evidence that supports the judgment, disregard contrary evidence, and draw all reasonable inferences to uphold the judgment. [Citation.] "It is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it." ' " (*In re Marriage of Nelson* (2025) 115 Cal.App.5th 904, 914.)

We conclude there was sufficient evidence to support the trial court's finding that Jojit had freely, voluntarily, and knowingly signed the interspousal transfer deed.  Maryann testified that she and Jojit had

8

discussed that the property would be solely in her name and she would be solely responsible for the mortgage payments. She had for a period of years expressed to him an interest in purchasing her own house, which he did not think was a good financial decision, she explained. She also testified that she did nothing to pressure Jojit into signing the deed, that he knows how to read, and that he had an opportunity to think about signing it before he did.

None of Jojit's contentions about this testimony persuade us otherwise. He argues it was improper for the trial court to rely "solely" on Maryann's "self-serving" testimony. But Jojit did not make *any* presentation of evidence because he failed to appear at the second half-day of trial. And in any event, the " 'direct testimony of a single witness is sufficient to support a finding unless the testimony is physically impossible or its falsity is apparent "without resorting to inferences or deductions." ' " (*In re Marriage of Nelson*, *supra*, 115 Cal.App.5th at p. 914.) Jojit argues it was also improper for the trial court to rely on Maryann's testimony regarding her fear of Jojit, given the domestic violence, as "further support" that she would not have wanted to mislead him. We disagree, as this testimony has some tendency to corroborate her account of her own conduct, and the trial court cited it only as "further support" for a conclusion based on the uncontested and "sufficient" evidence that Jojit knew what he was signing.

Jojit next contends that Maryann's testimony about why she had him sign the interspousal transfer deed—as a "condition of the funding" for the mortgage—suggests he "may have believed" it was "merely a formality required by the lender" and not a "complete relinquishment of his community property interest." But Jojit does not point to any evidence at trial that this "condition" was relayed to him, let alone that he held any such belief.

9

Finally, even if the interspousal transfer deed was valid, Jojit argues the down payment for the house came from community funds and gave him a pro tanto interest that the trial court failed to credit. (See *In re Marriage of Allen* (2002) 96 Cal.App.4th 497, 501 [where community funds are used on spouse's separate property, community is entitled to pro tanto interest or reimbursement].) Maryann responds that Jojit has forfeited this argument because he failed to raise it in the trial court below. Jojit does not dispute this failure, nor does he cite evidence to support his factual assertion. Accordingly, we deem the argument forfeited. (*In re Marriage of Moore* (2024) 102 Cal.App.5th 1275, 1289 ["failure to raise an issue in the trial court forfeits the claim of error on appeal"].)

## III. Domestic Violence Findings

Jojit argues the domestic violence findings made by the court on September 1, 2021 were not supported by substantial evidence. But Jojit does not grapple with the substance of testimony from Maryann or their adult children on the issue. Instead, he argues that this evidence was "one-sided" because the video he attempted to introduce would have offered "potentially contradictory" evidence. (Boldface and capitalization omitted.) We reject this argument for the reasons described above.

## IV. Retroactive Modification of Temporary Spousal Support

Jojit argues the trial court erred in selecting July 1, 2023 as the effective date from which to retroactively modify temporary spousal support to $0. He contends the effective date should have been September 1, 2021, when the trial court made its domestic violence findings. Accepting this contention would appear to retroactively modify Jojit's temporary spousal support to $0 *earlier* and thus result in a *higher* reimbursement amount owed by him to Maryann for the September 1, 2021 to June 30, 2023 period:

$70,994 ($3,227 monthly rate x 22 months) instead of $48,994 ($2,227 monthly rate x 22 months). Maryann does not "contest" Jojit's position on this issue, but the parties have not stipulated to any modification of the judgment.

We see no legal basis to accept the argument that the trial court erred in reducing temporary spousal support from September 1, 2021 to June 30, 2023 to $1,000 per month, instead of setting it to $0. Jojit contends it is contrary to the public policy against domestic violence expressed in section 4320. (*In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100, 1106.) Section 4320, subdivision (i)(5) requires a court to *consider* a judicial finding during the pendency of a divorce proceeding that the spouse has committed domestic violence in ordering spousal support, but nothing in section 4320 *requires* the court retroactively to modify temporary spousal support to $0 upon such a finding. To the contrary, the statute identifies several other factors for the court also to consider when issuing an order on spousal support, including the earning capacity of each party, periods of unemployment, the balance of hardships, whether there is a criminal conviction of an abusive spouse, and any other factors the court determines are "just and equitable." (§ 4320, subds. (a), (k), (m), (n).) That is precisely what the trial court did here, balancing its domestic violence finding with Maryann's "high earning" income, Jojit's "lower" income, evidence Jojit had "periods of unemployment and disability," and there being no criminal conviction for the domestic violence in this case. While we conclude the trial court did not err here, we note that nothing about our interpretation of section 4320 forecloses any voluntary reimbursement of temporary spousal support.

## V. New Argument in Reply Brief

Jojit argues, for the first time in his reply brief, that the trial court abused its discretion in setting permanent spousal support at $0 because it failed to engage in a "comprehensive" analysis of the section 4320 factors. We deem the argument forfeited. (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115 [appellant forfeits issue by failing to raise in opening appellate brief].) And in any event, we are not persuaded by the merits because the October 21, 2024 ruling included a detailed analysis of section 4320 factors and, upon considering and balancing those factors, the trial court could reasonably conclude no permanent spousal support order was appropriate.

## VI. Motion for Sanctions

Maryann filed a motion for sanctions against Jojit for bringing a frivolous appeal and submitting an opening appellate brief that violates the Rules. Jojit did not timely file an opposition. Nevertheless, we decline to grant the motion.

We have discretion to impose sanctions for a frivolous appeal, but such "sanctions should be 'used most sparingly to deter only the most egregious conduct' [citation], and that an appeal lacks merit does not, alone, establish it is frivolous." (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 518.) Maryann argues Jojit's appeal is frivolous because " 'it indisputably has no merit,' " meaning " 'any reasonable attorney would agree that the appeal is totally and completely without merit.' " (*Kinney v. Clark* (2017) 12 Cal.App.5th 724, 732.) We are not persuaded that the appeal here, which includes a substantial evidence challenge to the enforcement of the interspousal transfer deed with a discussion of the relevant testimony presented at trial, satisfies that standard.

Nor are we persuaded that sanctions are appropriate for violation of Rules in the opening appellate brief. We note the flaws in that briefing, which lacks record citations for many factual assertions and includes some assertions not fully supported by the cited portions of the record, and we remind Jojit's counsel of the obligation to ensure briefs comply with rule 8.204. But in the exercise of our discretion, we decline to impose sanctions here. " '[T]he borderline between a frivolous appeal and one which simply has no merit is vague,' " and we must police that line in a manner that avoids a "chilling effect on the assertion of litigants' rights on appeal." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

## DISPOSITION

The motion to impose sanctions is denied. The judgment is affirmed. Respondent shall recover her costs on appeal.


TUCHER, P. J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*Ubamos v. Ubamos* (A172775)


13