[Civ. No. 31242.   Second Dist., Div. One.   Dec. 6, 1967.]

JEANNE M. BARE, Plaintiff and Appellant, v. RICHARD L. BARE, Defendant and Respondent.

Alfred E. Paonessa, N. E. Youngblood and Ellis Horvitz for Plaintiff and Appellant.

Fred G. Kennedy for Defendant and Respondent.

FOURT, J.—Jeanne M. Bare, plaintiff wife, appeals from (1) the interlocutory judgment of February 8, 1965, granting a divorce to cross-complainant husband, Richard L. Bare; (2) the supplemental judgment dated July 12, 1965, determining the community and separate assets of the parties; and (3) the court's order dated October 6, 1965, denying attorney's fees and costs on appeal.

Jeanne and Richard Bare were married November 22, 1958. On May 3, 1963, Jeanne instituted this action for divorce in which Richard filed his cross-complaint; both alleged extreme cruelty. After the court on October 14, 1963, entered its order awarding Jeanne attorney fees and five months' temporary alimony, the parties amended their respective pleadings to incorporate the grounds of adultery. On March 30, 1964, pursuant to stipulation, temporary alimony payments of $300 per month were continued until the entry of the interlocutory judgment, provided that these payments should be deducted from Jeanne's distributive share of community property as determined after trial.

The trial started in October of 1964, but the matter was continued when it became apparent that the tracing of commingled funds would be required. Richard managed the community property of the parties during the marriage, except for Jeanne's earnings of approximately $35,000 which she handled separately. During the marriage he maintained a

single joint checking account with his wife, and at least eight separate accounts under various fictitious business names from which only he could withdraw funds. Because on occasion he commingled earnings and other community property with the funds in his separate accounts, and transferred funds from one separate account to another, sometimes paying community expenses from one or another of his separate accounts, the trial court was unable to determine initially the amount of community property.

At the court's suggestion, the parties stipulated to the appointment of Reginald K. Wilson, a certified public accountant, as referee. The referee was authorized to remove and use all accounting records and information theretofore introduced in evidence, to trace income and disbursements and segregate assets according to the source of funds utilized for acquisition. With certain exceptions reserved for the court's consideration, the referee was authorized to ascertain the existence of community property and the source of funds used to acquire separate property held in Richard's name alone.

Ultimately the hearings as to status and property rights were segregated. By interlocutory judgment dated February 8, 1965, Jeanne was denied a divorce, but a divorce was granted to Richard on the sole ground of cruelty. The court held that Richard was entitled to receive 55 percent of the community property and Jeanne the remaining 45 percent thereof. Jeanne does not here raise the issue of the sufficiency of the evidence as ground for reversal of the judgment, but attacks the determination of what constituted the community and separate property of the parties as well as the denial of her attorney's fees on appeal.

The trial concerning the property aspects of the divorce was continued and finally concluded on May 3, 1965, at which time the referee testified, summarizing the results of his audit, and submitted certain schedules. He was unable to prepare a complete referee's report pending the trial court's final determination as to those expenditures which were properly deductible as community expenses, those which should be charged to the husband's personal property accounts and the legal nature of certain items.

The defendant husband's gross separate and community earnings totaled approximately $230,000 during the marriage. The adjusted net community income up to February 11, 1964, was $90,765.88, excluding Jeanne's earnings. To this sum the

court added $10,400 support payments received by Jeanne for the benefit of her minor daughter and deposited in the community bank account, to obtain total community income of $101,165.88. The court found that total gross community expenses came to $97,844.41, leaving net cash of $3,321.74 plus personal property valued at $2,695.88, or a total cash value for the community property of $6,017.62. Richard's 55 percent of that amount was $3,309.69 while Jeanne's 45 percent was $2,707.93. Richard was allowed to retain most of the personal property, principally consisting of household items; deducting the $3,600 temporary alimony payments, Jeanne was left with a deficit of $892.07 as her share of the community.

Among the total gross community expenditures, as determined by the court, were the following: (1) $20,453.19 for home maintenance and reduction of principal pertaining to the family domicile; (2) $14,712.57 constituting the full amount of Richard's payments for the support of two children by a prior marriage; (3) $11,064.35, constituting one-half of the maintenance and operation expenses for the boat "Samarang"; and (4) divorce litigation expenses of $24,460.47. The court also held that the home used as the family domicile and the boat "Samarang" were the separate property of Richard.

Appellant contends, in reliance on *See* v. *See,* 64 Cal.2d 778 [51 Cal.Rptr. 888, 415 P.2d 776], that the trial court did not properly compute the distributable community property estate. It appears that the trial court utilized a method of accounting for community property earlier approved as a practical solution in situations where commingling had occurred (*Thomasset* v. *Thomasset,* 122 Cal.App.2d 116 [264 P.2d 626]) but that method did not make allowance for accounting intricacies imposed by the California Supreme Court following the trial. (*See* v. *See, supra; Weinberg* v. *Weinberg,* 67 Cal. 2d 557 [63 Cal.Rptr. 13, 432 P.2d 709].) For this reason, the decision must be modified.

Richard, a television producer, had on hand at the time of his marriage $23,125 in cash and securities. His income from separate property residuals amounted to $32,545.56 during the marriage and he received during that period a net settlement of $20,000 for personal injuries. Although the record discloses no unrealized increment in the value of Richard's separate assets, we recognize that his total separate resources amounted to $75,670.56 during the period of the marriage.

■ Richard was not entitled to (a) improve or enhance the value of his separate property at the expense of the community, or (b) obtain reimbursement from community funds, without his wife's express consent, for cummunity expenses he paid from separate funds. (*See* v. *See, supra,* 64 Cal.2d 778, 785-786.) ■ The husband can no longer sustain the burden of segregating assets he claims as separate property by demonstrating, as did Richard, that gross community income was annually and throughout the marriage so offset by gross community expenditures that the community estate was substantially consumed leaving only an insignificant balance at the termination of the marriage. The court in the instant case, however, determined the house to be Richard's separate property while allowing as deductible community expenses the cost of home maintenance, including principal repayments admittedly made from community funds; and it deducted from community one-half of the operating expenses of the boat ''Samarang,'' which was also awarded to Richard, largely in reliance upon the audit which determined that community disbursements generally exceeded community income.

Appellant contends that the trial court erred in finding that the home in which the parties resided during the marriage remained the separate property of Richard, without reimbursement for community contributions thereto. Title to the family home was vested in Richard as his separate property prior to their marriage, and after the marriage he used $6,413.24 of separate funds to construct a swimming pool on the property. Appellant claims she used separate property to purchase appliances, remodel the kitchen, and decorate the bedroom occupied by April (the minor daughter of Jeanne Bare). The community during the marriage paid approximately $4,000 to reduce the outstanding encumbrance on the dwelling. The referee found that expenses dedicated to the family residence during the marriage, excluding pool cost, amounted to $20,453.19, and deducted this sum in arriving at the amount of distributable community property. The trial court nonetheless awarded the residence exclusively to Richard on the theory that rent which otherwise would have been paid by the community for similar housing would have equalled or exceeded these home expenditures.

■ ''Contrary to the rule adopted in most community property states, under which the community has only the right of reimbursement for payments made with community funds on the purchase price of property purchased by one

spouse before marriage [citations], the rule developed through the decisions in California gives to the community a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds. [Citations.]'' (*Forbes* v. *Forbes,* 118 Cal.App.2d 324, 325 [257 P.2d 721].) ▆ Where the husband has used community funds to increase his separate estate, the court must determine the increase in his equity in the home during marriage and also the fair market value of the dwelling before and after the marriage. The community is entitled to a minimum interest in the property represented by the ratio of the community investment to the total separate and community investment in the property. In the event the fair market value has increased disproportionately to the increase in equity, the wife is entitled to participate in that increment in a similar proportion.

Appellant next contends that she is entitled to a community interest in the boat ''Samarang,'' which was purchased with funds taken from one of Richard's separate accounts, and determined by the court to be his separate property. When the parties were married, Richard owned the boat ''Orion.'' The record shows that over $5,000 of maintenance and operating expenses attributable to this boat, presumably including payments thereon of over $100 per month, were made from the joint account during marriage. Richard sold the ''Orion'' and on or about December 2, 1960, deposited the proceeds of sale ($5,267) in an existing separate account under the name ''Varieties, Ltd.'' (hereinafter called Varieties). Near the same time, in anticipation of a personal injury settlement soon to be received, Richard purchased the boat ''Samarang'' and during December 1960 he paid $3,000 toward its purchase price from the Varieties account. On January 4, 1961, he withdrew $10,764.19 from other separate accounts and deposited these funds in Varieties. During January 1961 he paid therefrom an additional $18,750 to complete the full purchase price of the ''Samarang.'' Not until April 11, 1961, did he receive the personal injury settlement of $20,000 net. Richard demonstrated to the satisfaction of the trial court that there was an overall or annual deficit of community property in relation to community expenses at the close of 1960, and the court found that the ''Samarang'' was his separate property. One-half of the amount of the boat's maintenance and operation expenses ($11,660.35) was, however,

deducted from community income to determine net community assets at the end of the marriage on the theory that the boat was used partly for business purposes and to produce community income.

In fact, the record discloses that Richard made deposits of both community and separate earnings in the Varieties account, and paid from time to time both community and separate expenses therefrom. The "Samarang" was purchased after two years of marriage, and the record does not contain sufficient evidence to enable this court to reconstruct the flow of funds into and out of the Varieties account during that two-year period in order to determine whether or not, *at the time of the acquisition,* there was an actual deficit in community property funds. (*See* v. *See, supra,* 64 Cal.2d 778.)

The vice of commingling is that the husband may not pay separate expenses with community funds and must reimburse the community if he does so. Yet, when he uses separate instead of community property to pay community expenses, even if the community is at that time exhausted, he cannot claim reimbursement, absent an agreement with his spouse, but intentionally or not he makes a gift to the community.

Thus, if Richard exhausted his separate funds in the Varieties account before the time the "Samarang" was purchased, and made replacements from community funds, the latter remained community property; if he then paid separate expenses therefrom, separate funds later deposited merely reimbursed the community. Insofar as the "Samarang" purchase may have been made with community funds, or from sources not clearly traceable to segregated separate property, it is community property and to that extent its cost as well as its maintenance and operation expense may be deducted from community income.

We note further that the trial court deducted from community income the full amount of Richard's support payments for two children of a prior marriage. "Defendant's alimony and child support obligations were incurred before his second marriage. They represent a continuing obligation, however, based on both his community and separate incomes." (*Weinberg* v. *Weinberg, supra,* 67 Cal.2d 557, 563-564.) Richard was a television producer and his principal income during the marriage was from salaries and residuals. Insofar as such residuals are attributable to television programs produced before the marriage, they constitute separate property. It is impossible to say, however, that his obligation

for child support was not based on his total earnings, both salary and residuals, and it would be unjust for Richard to preserve as separate property those residuals from earlier productions falling due during his second marriage by using only community income to pay child support. "An apportionment of defendant's alimony and child support obligations between his separate income and the community income is both practical and fair. Defendant's total separate and community income during the period of his second marriage should be used to determine the proportionate amounts that his separate and community property will be charged." (*Weinberg* v. *Weinberg, supra,* 67 Cal.2d 557, 564.) Without evidence of any unrealized increase in value of Richard's separate property assets during his marriage, we conjecture that child support payments would be fairly apportioned if one-third were attributed to Richard's separate property receipts of approximately $50,000 during marriage, as opposed to community income totaling roughly $100,000. On this basis, the trial court should have deducted only $9,806.38 as a community expense.

■ Appellant contends, finally, that the order of the trial court denying her attorney's fees on appeal constitutes an abuse of discretion. Clearly the appeal presented "debatable questions which were not without substantial merit or controversy" (*Norris* v. *Norris,* 50 Cal.App.2d 726, 735 [123 P.2d 847]; *Weil* v. *Weil,* 37 Cal.2d 770, 791 [236 P.2d 159]), thus rendering such denial an abuse of discretion. Reasonable attorney's fees should be allowed as the trial court may determine.

No issues having been raised by appllant's brief concerning the interlocutory judgment, we dismiss that appeal. The appeal from the supplemental judgment is severable (*Harrold* v. *Harrold,* 43 Cal.2d 77 [271 P.2d 489]).

The order of October 6, 1965, is reversed.

The portions of the supplemental judgment appealed from are reversed and the cause remanded for further proceedings in accordance with this opinion.

Wood, P. J., and Lillie, J., concurred.