125 Cal.Rptr.2d 193 (2002)
101 Cal.App.4th 890
Virginia BONO, Plaintiff and Appellant,
v.
John CLARK, as Executor, etc., Defendant and Respondent.
No. H023029.
Court of Appeal, Sixth District.
August 30, 2002.
Rehearing Granted September 26, 2002.
*195 Ernest L. Miller, Miller, Domino & Ackerman, Attorney for Plaintiff and Appellant.
William G. Clark, San Jose, Clark & Clark, Attorneys for Defendant and Respondent.
Rehearing Granted September 26, 2002. See 128 Cal.Rptr.2d 31.
*194 WUNDERLICH, J.
The plaintiff in this action asserts various property claims against her late husband's estate. Plaintiffs principal claim is for the recovery of community property used to improve the husband's separate real estate during the parties' 17-year marriage. Plaintiffs other claims relate to personal property left in the husband's possession when the parties separated.
The trial court disposed of all of plaintiffs claims adversely to her, some by summary adjudication, and the rest by a defense judgment after trial. Plaintiff challenges all of those determinations on appeal.
As we explain, we conclude that the judgment contain errors of law that require reversal and remand.

FACTS
The plaintiff is this action is Virginia "Ginni" Bono (plaintiff). The defendant is John Clark, executor of the Estate of John Bono (defendant). John Bono (decedent) was plaintiffs husband.
Plaintiff and decedent were married in 1977 and separated in 1994.
*196 Prior to his marriage to plaintiff, decedent owned real property located at 4141 Canada Road in Gilroy, California. Decedent and his brother had purchased the Gilroy property in 1960 for $12,500. The two brothers later divided the 97-acre property. Following that division, decedent's property comprised some 46.5 acres and included a 10-foot by 60-foot trailer. Sometime after 1972, plaintiff moved into the trailer with her son. Up until then, the trailer had never been occupied. At that time, the trailer was "dilapidated;" it had no electricity, no telephone service, and no laundry facilities. Despite the condition of the trailer, plaintiff testified that the property was worth $50,000 in 1977, when she and decedent married.
Throughout their 17-year marriage, the Bonos used the trailer on the Gilroy property as their residence. During that time, they made extensive improvements to it. Among other things, they converted a large porch into several rooms (bedroom, dining room, laundry room, office), and they added a large family room and a concrete patio. They remodeled the kitchen and bathroom and installed new carpet in the bedroom. They installed a new well and brought electrical service to the property. The improvements effectively converted the 600-square-foot trailer into a 1920-square-foot home. According to plaintiffs testimony, the total cost of the improvements was between $77,500 and $80,500.
The Bonos separated on Labor Day 1994. Plaintiff moved from the property at that time; a mutual restraining order issued in September 1994 prevented her from returning.
In June 1995, decedent petitioned for dissolution of the marriage. Plaintiff answered the petition in August 1995, and both parties filed property declarations. Thereafter, however, neither party took any action to resolve their property disputes or to bring the dissolution action to a conclusion.
In November 1998, while the dissolution action was still pending, decedent died.
In 2000, decedent's estate sold the real property for $555,000.

PROCEDURAL HISTORY
In January 2000, plaintiff filed her first amended complaint against the estate. The complaint stated two causes of action: the first was for declaratory relief; the second was for conversion. In the prayer of the complaint, plaintiff sought a declaration of her community property rights, a determination of community property funds expended to improve decedent's separate property during the marriage, and damages for conversion of plaintiffs separate property.
Defendant promptly answered plaintiff s complaint.
Thereafter, in October 2000, defendant moved for summary judgment or, alternatively, for summary adjudication. Plaintiff opposed the motions.
The trial court heard and decided defendant's motions in November 2000. The court denied summary judgment, but partially granted the summary adjudication motion. As to the first cause of action, for declaratory relief, the court concluded that neither the statute of limitations nor the doctrine of laches barred relief as a matter of law. Nevertheless, the court concluded, plaintiff had no right to reimbursement of community funds used to improve decedent's separate property, because she consented to the use of those funds for that purpose. Turning to plaintiffs second cause of action, for conversion, the court granted summary adjudication on the ground that it was time-barred.
*197 In February 2001, the matter proceeded to trial on the remaining issues. During the two-day bench trial, the court gave the parties wide latitude in putting on evidence, despite the prior summary adjudication order. Thus, plaintiff was permitted to offer evidence in support of her theory that she had a pro tanto community property interest in the decedent's property despite the prior ruling denying her reimbursement claim as a matter of law. Defendant was allowed to offer evidence in support of the estate's laches defense.
In March 2001, the trial court filed its statement of decision. In it, the court first described the two issues that were previously adjudicated adversely to plaintiff reimbursement of community property contributions to the real property and conversion of her separate propertyand explained that those claims were res judicata. The court next rejected plaintiffs claim of a pro tanto community interest in decedent's real property. The court also disposed of plaintiffs community property claims to certain items of personal property, including livestock and motor vehicles. Finally, the court determined that plaintiff was guilty of laches in bringing this action.
In April 2001, the court entered judgment for defendant.
Plaintiff promptly appealed both from the judgment and from the earlier summary adjudication order.

DISCUSSION

I. First Cause of Action: Community Property Claims

A Laches

We consider the affirmative defense of laches at the threshold, because the trial court's finding of laches, if affirmed, would be dispositive of the first cause of action for declaratory relief.

1. Standard of review
Defendant urges us to review the trial court's finding of laches deferentially, for an abuse of discretion only. (See, In re Marriage of Plescia (1997) 59 Cal. App.4th 252, 256, 69 Cal.Rptr.2d 120: "[I]n the absence of a palpable abuse of discretion, the trial court's finding of laches will not be disturbed on appeal. [Citation.]" Accord, In re Marriage of Copeman (2001) 90 Cal.App.4th 324, 333, 108 Cal.Rptr.2d 801.)
We decline to do so here. As the California Supreme Court recently recognized, there are circumstances in which it is error to review a laches determination "under the deferential abuse of discretion standard." (Johnson v. City of Loma Linda (2000) 24 Cal.4th 61, 68, 99 Cal.Rptr.2d 316, 5 P.3d 874 [held: the appellate court erred in applying abuse of discretion standard where the trial court's laches determination was the basis for its grant of summary judgment, which is subject to de novo review].)
"Generally speaking, the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances, and in the absence of manifest injustice or a lack of substantial support in the evidence its determination will be sustained. [Citations.]" (Miller v. Eisenhower Medical Center (1980) 27 Cal.3d 614, 624, 166 Cal. Rptr. 826, 614 P.2d 258.) In other words, appellate courts review such determinations for "manifest injustice" or for "lack of substantial ... evidence." (Ibid.)
In cases such as this, where the finding of laches is made after trial, the proper appellate focus is the evidence in support of the finding. Even the two appellate decisions cited above, which employ the deferential abuse of discretion standard, *198 do not disregard the evidence. (See, In re Marriage of Plescia, supra, 59 Cal. App.4th at p. 257, 69 Cal.Rptr.2d 120: "In light of the record, the trial court did not palpably abuse its discretion." And see, In re Marriage of Copeman, supra, 90 Cal.App.4th at p. 326, 108 Cal.Rptr.2d 801: "[T]he trial court's finding of laches was supported by the evidence.") As the California Supreme Court recently explained: "Generally, a trial court's laches ruling will be sustained on appeal if there is substantial evidence to support the ruling." (Johnson v. City of Loma Linda, supra, 24 Cal.4th at p. 67, 99 Cal.Rptr.2d 316, 5 P.3d 874, citing Miller v. Eisenhower Medical Center, supra, 27 Cal.3d at p. 624, 166 Cal.Rptr. 826, 614 P.2d 258.) We therefore examine the trial record for evidence in support of the trial court's finding of laches.

2. The doctrine and its application here
Laches may bar relief in equity to those who neglect their rights, where such neglect operates to the detriment of others. (See generally, 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, §§ 14-16, pp. 690-694.) Given its nature as an equitable defense, however, there are recognized limits on application of the doctrine of laches. For one thing, the doctrine "is not applied strictly between near relatives." (Berniker v. Berniker (1947) 30 Cal.2d 439, 448-449, 182 P.2d 557, citing Rottman v. Rottman (1921) 55 Cal.App. 624, 632, 204 P. 46 [spouses].) More generally, "laches is not technical and arbitrary and is not designed to punish a plaintiff. It can only be invoked where a refusal would be to permit an unwarranted injustice. Whether or not the doctrine applies depends upon the circumstances of each case." (Hiett v. Inland Finance Corp. (1930) 210 Cal. 293, 300, 291 P. 414.)
"`The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.'" (Johnson v. City of Loma Linda, supra, 2A Cal.4th at p. 68, 99 Cal.Rptr.2d 316, 5 P.3d 874, quoting Conti v. Board of Civil Service Commissioners (1969) 1 Cal.3d 351, 359, 82 Cal.Rptr. 337, 461 P.2d 617.)

a. Delay
"Laches implies that the plaintiff should have done something earlier." (Hill v. Hattrem (1981) 117 Cal.App.3d 569, 573, fn. 3, 172 Cal.Rptr. 806.) Whether the plaintiff should have acted sooner depends on the circumstances of the particular case.
In this case, defendant argues that plaintiff should have sought resolution of her claims while decedent was still alive. Defendant charges plaintiff with unreasonable delay for not pressing her property claims during the nearly three and a half years between the filing of the dissolution action and decedent's death. (Cf, Johnson v. City of Loma Linda, supra, 24 Cal.4th at p. 68, 99 Cal.Rptr.2d 316, 5 P.3d 874 [delay of more than three years in seeking reinstatement unreasonable].)
Plaintiff counters that if there was a delay at all, it was neither unjustified nor chargeable solely to her. First, as justification for not pursuing her claims sooner, plaintiff points out that she was unrepresented during most of the time the dissolution action was pending because she was without the economic means to hire an attorney. Next, plaintiff argues that the failure to pursue the dissolution action to conclusion should not be laid solely at her feet. According to plaintiff, decedentas the petitioner in the dissolution action had an equal or greater obligation to conclude the action and to resolve the property *199 issues promptly. Moreover, she asserts, it was in decedent's best interest not to bring the matter to trial, since he continued to enjoy exclusive control of the property she claimed as long as the action was still pending. Finally, plaintiff points out, she filed a claim with the Estate within six months of decedent's death and then filed this action some eight months later. Thus, she argues, there was no delay.
We disagree with plaintiffs implicit assertion that a party's inability to afford counsel necessarily justifies delay. (Cf., e.g., Carrasco v. Craft (1985) 164 Cal. App.3d 796, 804-806, 210 Cal.Rptr. 599 [lack of funds to hire attorney does not always excuse default]; Davis v. Thayer (1980) 113 Cal.App.3d 892, 906-907, 170 Cal.Rptr. 328 [same; default not excused].) We find more persuasive plaintiffs argument that decedent bore the primary responsibility for concluding the dissolution action. (Cf., e.g., Howard v. Thrifty Drug & Discount Stores (1995) 10 Cal.4th 424, 436, 41 Cal.Rptr.2d 362, 895 P.2d 469 [plaintiffs burden to avoid five-year dismissal statute].)
But we need not decide here whether plaintiff is responsible for an unjustified delay in concluding the dissolution action. Even assuming that the trial court was correct in finding that plaintiff unreasonably delayed, that finding alone will not support a laches defense. "Delay is not a bar unless it works to the disadvantage or prejudice of other parties." (11 Witkin, Summary of Cal. Law, supra, Equity, § 15, p. 692, original italics. See also, Conti v. Board of Civil Service Commissioners, supra, 1 Cal.3d at p. 359, fn. 7, 82 Cal.Rptr. 337, 461 P.2d 617. Compare earlier California cases cited in Zakaessian v. Zakaessian (1945) 70 Cal.App.2d 721, 726, 161 P.2d 677.)
We therefore turn to the more critical inquiry: whether defendant has demonstrated prejudice.

b. Prejudice
Prejudice may be shown where the plaintiffs delay causes detriment to the defendant. (See, e.g., In re Marriage of Plescia, supra, 59 Cal.App.4th at pp. 256-257, 69 Cal.Rptr.2d 120 [prejudice shown where ex-wife delayed more than nine years before seeking support arrearages; during that period, ex-husband had retired and could no longer pay the support order]; Nealis v. Carlson (1950) 98 Cal.App.2d 65, 67-69, 219 P.2d 56 [prejudice shown where ex-wife delayed eight years after knowledge of final divorce decree before making claim of invalidity; during that period, ex-husband had adopted a child, changed his will, and died]. Compare, Field v. Bank of America (1950) 100 Cal.App.2d 311, 313-314, 223 P.2d 514 [no prejudice shown where plaintiffs long inactivity actually benefited defendant by its accrual of trustee fees during the delay].)
Here, defendant claims the estate has been prejudiced because decedent's death deprived it of one of only two witnesses to the transactions in question. "Death of important witnesses may constitute prejudice." (Stafford v. Bollinger (1962) 199 Cal.App.2d 289, 296, 18 Cal. Rptr. 568. Accord, Garrity v. Miller (1928) 204 Cal. 454, 460, 268 P. 622; Getty v. Getty (1986) 187 Cal.App.3d 1159, 1171, 232 Cal.Rptr. 603. Cf., Zakaessian v. Zakaessian, supra, 70 Cal.App.2d at p. 727, 161 P.2d 677: "The death of a material witness is [only] one factor in determining whether laches is present.")
In this case, however, defendant offered no evidence at trial to demonstrate whether and how the estate was prejudiced by decedent's unavailability as a witness. *200 The trial judge who earlier denied summary adjudication of the laches defense aptly noted in his order: "Plaintiff and Decedent stipulated to maintain the status quo of the property in their possession and thus greatly reduced the possibility that the delay would cause problems in locating specific items of property; and ... even though Decedent is dead, Defendant may have other witnesses, records and evidence at his disposal to adequately represent the interests of Decedent's estate." At trial, defendant offered no evidence of prejudice. To the contrary, the estate presented its own evidence, produced its own witnesses (though not the executor), and vigorously cross-examined plaintiff. And although defendant's trial counsel argued below that the estate had not abandoned its laches defense, he offered the court no trial evidence to support that closing argument. On appeal, defendant defends the trial court's finding of prejudice with this one-sentence observation: "The trial court witnessed the difficulty on the part of the [defendant] in contradicting or modifying the testimony of the [plaintiff], since she and the decedent were the only ones privy to the information concerning the acts surrounding the marital residence."
"Prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue." (Miller v. Eisenhower Medical Center, supra, 27 Cal.3d at p. 624, 166 Cal.Rptr. 826, 614 P.2d 258, citing Conti v. Board of Civil Service Commissioners, supra, 1 Cal.3d at p. 361, 82 Cal.Rptr. 337, 461 P.2d 617. See, Miller v. Eisenhower Medical Center, supra, 27 Cal.3d at pp. 625, 626, 166 Cal. Rptr. 826, 614 P.2d 258 [finding no evidence of prejudice and thus no support for the trial court's finding of laches].)
Defendant bore the burden of production and the burden of proof on this issue but failed to carry either one, having offered no evidence at trial on the issue of prejudice. "[S]ince we do not presume prejudice, and since respondents did not prove prejudice, the defense of laches fails." (Conti v. Board of Civil Service Commissioners, supra, 1 Cal.3d at p. 355, 82 Cal.Rptr. 337, 461 P.2d 617.)
Having determined that there is no substantial evidence of laches, we turn to a consideration of the other issues raised by plaintiff with respect to her first cause of action.

B. Community Property Claims: Real Property
Plaintiff asserts a community property interest in decedent's separate real property, based on the fact that the parties used community funds to improve the property. Defendant challenges that assertion. First, he argues, plaintiff is not entitled to reimbursement, because she consented to the use of community property funds to improve the property. In addition, he contends, she has no right to a protanto interest in the property. That contention rests in part on a claimed lack of legal authority and in part on the implication that plaintiff failed to plead such a claim against the estate. Before addressing the parties' specific contentions, we set forth the applicable legal principles, beginning with the standard of review.

1. Standard of review
"Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test." (Crocker National Bank v. City and County of San Francisco (1989) 49 Cal.3d 881, 888, 264 Cal.Rptr. 139, 782 P.2d 278.) Thus, for example, appellate review of "a trial court's finding *201 that a particular item is separate or community property is limited to a determination of whether any substantial evidence supports the finding." (In re Marriage of Dekker (1993) 17 Cal.App.4th 842, 849, 21 Cal.Rptr.2d 642.)
"Questions of law relate to the selection of a rule; their resolution is reviewed independently." Crocker National Bank v. City and County of San Francisco, supra, 49 Cal.3d at p. 888, 264 Cal. Rptr. 139, 782 P.2d 278.) Likewise, where mixed questions of fact and law require "a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently. [Citation.]" Ibid. Cf., In re Marriage of Dekker, supra, 17 Cal.App.4th at p. 849, fn. 11, 21 Cal.Rptr.2d 642.)
In this case, we apply the substantial evidence standard to the trial court's factual findings as to the existence and character of the parties' property. By contrast, the trial court's determination of what legal principles apply is subject to our de novo review.

2. Recovery of community property expenditures

a. The Moore/Marsden rule and its extension to improvements
When community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property. (In re Marriage of Moore (1980) 28 Cal.3d 366, 371-372, 168 Cal.Rptr. 662, 618 P.2d 208; In re Marriage of Marsden (1982) 130 Cal.App.3d 426, 436-440, 181 Cal.Rptr. 910.) This well-established principle is known as "the Moore/Marsden rule." (See generally, Hogoboom & King, Cal. Practice Guide: Family Law 2 (The Rutter Group 2002) ¶¶ 8:295-8:312, pp. 8-75 to 8-83; 1 Kirkland et al., Cal. Family Law: Practice and Procedure (2d ed. 2002) Division of Specific Property, § 21.03, pp. 21-11 to 21-18.) The Moore/Marsden rule has been extended to cases involving separate commercial property. (In re Marriage of Frick (1986) 181 Cal.App.3d 997, 1007-1008, 226 Cal. Rptr. 766.) It has also been applied where the parties refinanced a separate residential mortgage during marriage. (In re Marriage of Branco (1996) 47 Cal.App.4th 1621,1625-1629, 55 Cal.Rptr.2d 493.)
Until recently, however, no reported appellate decision had considered whether the Moore/Marsden rule properly extends to community expenditures for improvements to one spouse's separate property.
Last year, the Third District Court of Appeal addressed that issue. (See, In re Marriage of Wolfe (2001) 91 Cal.App.4th 962, 110 Cal.Rptr.2d 921 (Wolfe).) After exhaustively tracing the development of the law in this area, the Wolfe court "discarded" the gift presumption for such improvements. (Wolfe, supra, 91 Cal. App.4th at p. 967, 110 Cal.Rptr.2d 921.) As the court remarked: "There is little logic in a rule that presumes an unconditional gift when one spouse uses community funds to improve the other spouse's property.... As we explained, our courts do not indulge such a presumption when community funds are used to assist in the purchase or to reduce an encumbrance on a separate asset. The application of community funds results in what amounts to co-ownership of the asset. [Citations.] There is no reason to presume a gift when funds are applied to improve separate property." (Id, at p. 972, 110 Cal.Rptr.2d 921, original italics.)
This year, the Second District Court of Appeal, Division Two, also addressed the issue of community-funded improvements to separate property. (See, In re Marriage *202 of Allen (2002) 96 Cal.App.4th 497, 116 Cal.Rptr.2d 887 (Allen).) Agreeing with Wolfe, the court rejected the notion that "a wife's consent to the use of community funds to improve her husband's separate real property raises a presumption that the funds were a gift of the funds to the husband." (Id. at p. 498, 116 Cal. Rptr.2d 887.)
In reaching its conclusion, the Allen court reversed the trial court's contrary determination. The trial court there found itself "constrained by the holdings" in two earlier cases, In re Marriage of Jafeman (1972) 29 Cal.App.3d 244, 105 Cal.Rptr. 483 (Jafeman) and In re Marriage of Camire (1980) 105 Cal.App.3d 859, 164 Cal. Rptr. 667 (Camire). (Allen, supra, 96 Cal.App.4th at pp. 499-500, 116 Cal. Rptr.2d 887.) Both Jafeman and Camire indulge in the presumption of a gift of community property in these circumstances, but both cases also predate the Moore/Marsden rule. (Ibid.) As the Allen court noted, developments in family law have eroded the underpinnings of the gift presumption on which those cases rely. (Id at p. 501, 116 Cal.Rptr.2d 887. See also, In re Marriage of Gowdy (1986) 178 Cal.App.3d 1228, 1230-1234, 224 Cal.Rptr. 400. Cf, Hogoboom & King, Cal. Practice Guide: Family Law 2, supra, ¶ 8:312, p. 8-83 [concluding that Camire "is of questionable precedential value" because it predates enactment of the statutory presumption that joint title acquisitions during marriage are community property].)
As the Allen court explained: "A spouse who consents to the use of community funds to improve the other spouse's separate property does not necessarily intend a gift.... Where community funds are used to make capital improvements to a spouse's separate real property, the community is entitled to reimbursement or a pro tanto interest under the Moore/Marsden rule both because its rationale applies equally to the reduction of an encumbrance and to capital improvements, and also because the legal underpinnings of the alternative rule ... [citation], have been destroyed by intervening changes in family law." (Allen, supra, 96 Cal.App.4th at p. 501, 116 Cal.Rptr.2d 887, fn. omitted.) "The Moore/Marsden rule is based upon the principle that where community funds contribute to the owner's equity in separate property, the community obtains a pro tanto quasi-ownership stake in the property.... [Citation.] Because contributions to capital improvements also increase the property's equity value, Moore's rationale applies as well to capital improvements made to separate property." (Id. at p. 502, 116 Cal.Rptr.2d 887. Cf., Fam.Code, § 2640, subd. (a) [separate property contributions to the acquisition of community property include payments for improvements].)
We agree that the rationale of the Moore/Marsden rule applies with equal force to capital improvements, as a matter of both logic and fairness. We therefore adopt the principles expressed in Wolfe and Allen. In doing so, we necessarily disagree with earlier cases, such as Jafeman and Camire, to the extent that they apply a gift presumption to community-funded expenditures for capital improvements to a spouse's separate property.

b. Application to this case
Having adopted the principles announced in Wolfe and Allen, we next consider how they apply in this case.
We first address defendant's implication that plaintiffs pleading does not support a pro tanto recovery. According to defendant, plaintiff seeks only reimbursement on behalf of the community. We do not read plaintiffs complaint so narrowly. (See Civ. Proc., § 452 [liberal *203 construction of pleadings].) Her prayer asks for a determination of the community property funds expended on decedent's property "and the increased value, and or reimbursement for said funds." In our view, that request adequately states an alternative claim for a pro tanto interest in the property.
We turn next to a consideration of the nature and extent of plaintiffs entitlement to recovery. Neither Wolfe nor Allen provides much guidance on this question, given the procedural and factual contexts in which those two cases were decided.
In Wolfe, the wife sought limited recovery, asking only for reimbursement of her one-half share of the cost of the community improvements to the husband's separate property. (Wolfe, supra, 91 Cal.App.4th at p. 973, 110 Cal.Rptr.2d 921.) The wife there made no claim to any equity appreciation nor, apparently, did she assert a pro tanto interest in the husband's property as a result of the community-funded improvements. (Ibid.) The court agreed that the wife was "at least entitled to one-half of the amount expended on the improvement." (Ibid.) Given the nature of the wife's claim, the evidentiary record, and the judgment below, the Wolfe court found it unnecessary to remand for that determination. (Ibid.)
In Allen, by contrast, the appellate court concluded that remand was required. As the court explained: "It is premature ... to address the issue of the proper measure of the community's reimbursement rights or pro tanto interest in the present case. Because the trial court excluded evidence on the issue, it made no findings regarding the contested issues of whether community funds were in fact expended for improvements to the family residence ... and, if so, the amount of any expenditures. Nor did it allow evidence on the issue of increase in value attributable to such expenditures. This is a difficult and complex issue, which we decline to address in a vacuum. While we do not believe the difficulty in calculating damages requires a different result [citation], we remand for further factual development." (Allen, supra, 96 Cal.App.4th at p. 505, 116 Cal. Rptr.2d 887.)
In this case, the record is somewhat more well-developed than in Allen, but it is still incomplete. The trial record here includes plaintiffs testimony that the improvements were funded with community property. Defendant attempted to undermine that evidence with cross-examination questions suggesting that some improvements were funded with money from decedent's inheritance. But that attempt was unsuccessful, and defendant offered no evidence tracing any expenditures to separate property sources belonging to decedent. (Cf., In re Marriage of Higinbotham (1988) 203 Cal. App.3d 322, 328-329, 249 Cal.Rptr. 798.) Based on plaintiffs uncontradicted testimony, the trial court made a factual finding that "certain improvements were made and paid for with community funds." In addition to evidence showing the source of the money used for improvements, the record also includes testimonial evidence of the amount of money spent on those improvements. By plaintiffs estimates and recollection, the cost of the improvements totaled between $77,500 and $80,500. But despite the fact that plaintiffs testimony was uncontradicted, the court made no factual finding as to the cost of the improvements. Similarly, the record includes undisputed testimonial evidencebut no judicial determinationon the question of whether the improvements enhanced the value of the property. (See Wolfe, supra, 91 Cal. App.4th at p. 972, 110 Cal.Rptr.2d 921, noting that "improvements do not always *204 enhance the value of an asset; indeed, ill-advised improvements may well diminish the value of property.") Finally, while there was a stipulation at trial concerning the sales price of the decedent's separate real property in 2000, the record contains no evidence of the value of that property as of the date of separation six years earlier.[1]
Given the evidentiary gaps in this record, remand is necessary for a factual determination of the nature and extent of plaintiffs entitlement to recovery for the community property expenditures to decedent's separate property.
If the trial court determines that the improvements to the trailer did not enhance the property's value, plaintiffs recovery will be limited to reimbursement of one-half of the community funds spent on improving the decedent's property. (Wolfe, supra, 91 Cal.App.4th at p. 972, 110 Cal.Rptr.2d 921.)
However, in the event that the court finds that the improvements contributed to an increase in the property's equity value, the community will be entitled to a pro tanto interest in the property. (Allen, supra, 96 Cal.App.4th at p. 502, 116 Cal. Rptr.2d 887.) In calculating the community's pro tanto interest, the following principles apply. First, the decedent's separate property interest includes both pre-marital and post-separation appreciation in the value of the property.[2] (See, In re Marriage of Marsden, supra, 130 Cal.App.3d at pp. 437-439, 181 Cal.Rptr. 910 [pre-marital appreciation as separate property]; Fam.Code, § 771 [post-separation earnings and accumulations as separate property].) Next, the community's contributions to equity are considered. Here, the community's financial investment in the property took the form of improvements, rather than acquisition or debt reduction expenditures. For that reason, care must be taken to include only capital improvements, and then only to the extent that those capital improvements enhance the property's value. (Cf., In re Marriage of Moore, supra, 28 Cal.3d at p. 372, 168 Cal.Rptr. 662, 618 P.2d 208 [holding that it is improper to include mortgage interest and property taxes in calculating the community's share since "such expenditures do not increase the equity value of the property"]. And see, Wolfe, supra, 91 Cal.App.4th at p. 972, 110 Cal.Rptr.2d 921 [noting that "improvements do not always enhance the value of an asset"].) Furthermore, in this case, there may be reason to consider the value of the acreage separately from that of the home, if the improvements enhanced only the residence. (Cf., e.g., Allen, supra, 96 Cal.App.4th at p. 505, 116 Cal. Rptr.2d 887 [noting the lack of evidence "on the issue of increase in value attributable to such expenditures"].) Once the amount of the investment has been determined, the community's interest in the property is calculated as "`the ratio of the community investment to the total separate and community investment in the property.'" (In re Marriage of Moore, *205 supra, 28 Cal.3d at p. 372, 168 Cal.Rptr. 662, 618 P.2d 208, quoting Bare v. Bare (1967) 256 Cal.App.2d 684, 690, 64 Cal. Rptr. 335.) That ratio, expressed as a percentage, is then multiplied by the appreciation in the property's value during the marriage prior to separation. (See, In re Marriage of Marsden, supra, 130 Cal. App.3d at pp. 438-439, 181 Cal.Rptr. 910.) Plaintiff would then be entitled to one-half of the resulting amount as her community property share.[3]
The principal effect of our holding is to put capital improvements on the same footing as expenditures for property acquisition or for mortgage reduction. In our view, as we explained, there are no meaningful differences among those three avenues of equity accretion and therefore no principled reason to distinguish among them. Nevertheless, we recognize that our holding creates an apparent anomaly on another front. In effect, it puts community contributions to separate property on a different footing than separate contributions to community property. In the latter case, recovery is limited to dollar-for-dollar reimbursement, without interest. (Fam.Code, § 2640, subd. (b) [separate property contributions to community property, if traced and unless waived, are reimbursed "without interest or adjustment for change in monetary value"].) Under our holding, by contrast, the investment of community funds entitles the community to share in the separate property's appreciation, even if "`the fair market value has increased disproportionately to the increase in equity'" resulting from the community improvements. (In re Marriage of *206 Moore, supra, 28 Cal.3d at p. 372, 168 Cal.Rptr. 662, 618 P.2d 208, quoting Bare v. Bare, supra, 256 Cal.App.2d at p. 690, 64 Cal.Rptr. 335.) In an inflationary real estate market, that entitlement may represent a tremendous boon to the community. When compared to the limited recovery for separate property contributions (through reimbursement only), the potentially more extensive recovery for community property contributions (through recognition of a quasi-ownership interest) might appear anomalous. (Cf., In re Marriage of Gowdy, supra, 178 Cal.App.3d at p. 1234, 224 Cal.Rptr. 400: "[I]t would be anomalous ... to hold that a spouse ... who permits community funds to be used to reduce an encumbrance on the other spouse's separate property has fewer rights than a spouse who permits his or her separate property to be used for the same purpose with respect to a community property.") Despite that, we believe that the conclusion we reach here is compelled as a logical extension of the Moore/Marsden rule. We also believe it is consistent with California's "partnership" model of marriage, which strongly favors community property. (Cf., e.g., Fam.Code, § 760; In re Marriage of Dekker, supra, 17 Cal.App.4th at pp. 850-851, 21 Cal.Rptr.2d 642; In re Marriage of Baragry (1977) 73 Cal.App.3d 444, 448,140 Cal.Rptr. 779.)
For the reasons explained above, the judgment must be reversed and the cause remanded to the trial court to determine the nature and extent of plaintiffs right to recover for community improvements to the decedent's separate property.

C. Community Property Claims: Personal Property
Plaintiff contends she is entitled to her one-half share of certain personal property assets that belonged to the community at the time of the parties' separation. According to plaintiff, those assets consisted of livestock (11 or 12 cows and four horses), plus three vehicles, with a combined value of more than $25,000. The assets were left at the property when the parties separated. With the exception of one vehiclea 1990 Ford pickup truck none of the assets appeared on the inventory of decedent's estate. At trial, plaintiff argued that decedent must have disposed of the missing assets, in violation of his fiduciary duties under the Family Code. Plaintiff also argued that she was entitled to her community share of the one remaining asset, the Ford truck.
The trial court rejected plaintiffs assertions. As to the missing items, the court found that plaintiff failed to carry her burden of proving decedent's breach of fiduciary duty. With respect to the Ford truck, the court found that plaintiff failed to submit evidence of its current value and, further, that the decedent had paid off the remaining indebtedness on the vehicle after separation. The court also determined that the decedent or his estate paid off a community property loan incurred for plaintiffs business, in the amount of $11,818.79, which had been secured by decedent's separate real property. In light of the payment of that loan, and plaintiffs failure to prove a value in excess of that debt, the court exercised its discretion to award the truck to decedent.
On appeal, plaintiff challenges the ruling as error.

1. Standard of review
We review the court's ruling under the substantial evidence standard. (Cf., (In re Marriage of Dekker, supra, 17 Cal.App.4th at p. 849, 21 Cal.Rptr.2d 642.))

2. Community property assets
With respect to the missing livestock and vehicles, the record supports the trial *207 court's determination that plaintiff failed to carry her burden of proof. Plaintiff offered no evidence to show that decedent had disposed of the items in contravention of his fiduciary duties. (See, Fam.Code, §§ 1100-1101, 2102. Cf., In re Marriage of Moore, supra, 28 Cal.3d at pp. 374-375, 168 Cal.Rptr. 662, 618 P.2d 208 [wife failed to prove husband's misappropriation of missing community property].) The mere absence of the assets four years after separation is insufficient to raise an inference that decedent disposed of them inappropriately. With respect to the cows and horses, for example, it might be equally reasonable to infer that they had died in the intervening years. In any event, the lack of evidence on this point fully warrants the trial court's determination. For that reason, plaintiff is not entitled to an award with respect to the missing assets, nor is she entitled to an accounting. (Cf., Fam. Code, § 1101, subd. (b).)
As to the sole remaining community asset, the Ford truck, we likewise agree with the trial court's determinations. First, the trial judge found that plaintiff failed to carry her burden of proving its value at the time of trial. (See, Fam.Code, § 2552.) Plaintiffs only evidence of value was her testimony that she paid between $8,500 and $9,000 for the truck in 1992. Defendant offered evidencein the form of the estate's inventory and appraisementthat the value of the Ford truck was $3,450 at some point after decedent's death in November 1998. The court was entitled to accept the estate's proffered value as being closer in time to trial. (Cf., e.g., In re Marriage of Duncan (2001) 90 Cal.App.4th 617, 625, 108 Cal.Rptr.2d 833 [court has broad discretion to determine valuation date to accomplish equitable division]; In re Marriage of Reuling (1994) 23 Cal.App.4th 1428, 1435, 28 Cal.Rptr.2d 726 [same].) Next, in dividing the community asset, the court considered the estate's payoff of the loan incurred for plaintiffs business. Although that loan was secured by decedent's separate real property, it was a community obligation. (Cf, e.g., In re Marriage of Branco, supra, 47 Cal. App.4th at p. 1629, 55 Cal.Rptr.2d 493 [community loan, though secured by wife's separate property, where proceeds benefited the community].) The loan payoff amount exceeded $11,800. It appears that either decedent or his estate paid that amount, since the payment was made after separation. Plaintiffs share of the community debt thus exceeded her share of the sole remaining community asset, the Ford truck, under any valuation theory. In light of these facts, the court was well within its discretion in awarding the truck in its entirety to decedent's estate.
Based on the evidence in the record, we affirm the trial court's ruling with respect to plaintiffs claims to community personal property assets.

II. Second Cause of Action: Conversion of Separate Property
The second cause of action of plaintiffs complaint alleges conversion of her separate property. As noted above, the trial court granted the defense motion for summary adjudication of that claim, on the ground that it was time-barred as a matter of law. Plaintiff contends that the grant of summary adjudication was error.

1. Appealability
A grant of summary adjudication is an intermediate order, which the appellate court may review on an appeal from the final judgment. (Code Civ. Proc., § 904.1. See, Jennings v. Marralle (1994) 8 Cal.4th 121, 128, 32 Cal.Rptr.2d 275, 876 P.2d 1074. Accord, Jacobs-Zorne v. Superior Court (1996) 46 Cal.App.4th 1064, 1070-1071, 54 Cal.Rptr.2d 385.)

*208 2. Standard and scope of review
We review a grant of summary judgment de novo, since it presents only questions of law. (Buss v. Superior Court (1997) 16 Cal.4th 35, 60, 65 Cal.Rptr.2d 366, 939 P.2d 766; Barton v. Elexsys Internal, Inc. (1998) 62 Cal.App.4th 1182, 1187, 73 Cal.Rptr.2d 212.)
In undertaking our independent review of the evidence submitted, we apply the same three-step analysis as the trial court. (Varni Bros. Corp. v. Wine World, Inc. (1995) 35 Cal.App.4th 880, 886-887, 41 Cal.Rptr.2d 740.) First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (Ibid.)
A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) To be entitled to judgment as a matter of law, the moving party must show by admissible evidence that the "action has no merit or that there is no defense" thereto. (Code Civ. Proc., § 437c, subd. (a).) A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. (Code Civ. Proc., § 437c, subd. (o)(2); Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 853, 107 Cal.Rptr.2d 841, 24 P.3d 493; Addy v. Bliss & Glennon (1996) 44 Cal.App.4th 205, 213-214, 51 Cal. Rptr.2d 642.) Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (o)(2). See, Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at p. 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.) Material facts are those that relate to the issues in the case as framed by the pleadings. (Juge v. County of Sacramento (1993) 12 Cal.App.4th 59, 67, 15 Cal. Rptr.2d 598.) The moving party's evidence is strictly construed, while that of the opponent is liberally construed. (Molko v. Holy Spirit Assn. (1988) 46 Cal.3d 1092, 1107, 252 Cal.Rptr. 122, 762 P.2d 46; Murillo v. Rite Stuff Foods, Inc. (1998) 65 Cal.App.4th 833, 840-841, 77 Cal.Rptr.2d 12.)

3. Statute of limitations
Plaintiff contends that there are disputed material fact questions concerning the timeliness of her action, and, consequently, that the trial court erred in concluding that her cause of action for conversion was time-barred. To assess that contention, we review the applicable statute and accrual rules as they apply to the facts of this case.

a. Applicable statute
Plaintiffs cause of action for conversion is subject to a three-year statute of limitations. (Code Civ. Proc., § 338, subd. (c).)

b. Accrual
As a general rule, the statute of limitations for conversion is triggered by the act of wrongfully taking property. (Strasberg v. Odyssey Group, Inc. (1996) 51 Cal.App.4th 906, 915-916, 59 Cal. Rptr.2d 474.)
But there is an exception in cases where "a fiduciary has concealed the material facts giving rise to the cause of action." (Strasberg v. Odyssey Group, Inc., supra, *209 51 Cal.App.4th at p. 916, 59 Cal.Rptr.2d 474; Bennett v. Hibernia Bank (1956) 47 Cal.2d 540, 561, 305 P.2d 20.) Plaintiff asserts that the trial court erroneously denied her the benefit of that exception. Plaintiff claimsas a disputed factual matterthat she was unaware that her separate property assets were missing from the marital home; she further claims that this factual dispute raises a triable issue. We disagree.
In this case, there is no evidence of concealment. That key fact distinguishes this case from the Strasberg case, on which plaintiff relies. In Strasberg, the defendants' predecessor, Inez Melson, had been Marilyn Monroe's business manager and assistant. (Strasberg v. Odyssey Group, Inc., supra, 51 Cal.App.4th at p. 911, 59 Cal.Rptr.2d 474.) After the celebrity's death, Melton surreptitiously retained some of her personal effects. (Id. at p. 912, 59 Cal.Rptr.2d 474.) The beneficiary of the estate had no reason to know of the existence of the items, much less that they had been taken. As the court explained: "Melson, while acting in her capacity of a fiduciary, wrongfully concealed the items she chose to retain from the Marilyn Monroe estate. Accordingly, the statute of limitations was tolled until the beneficiary discovered or ought to have discovered the existence of the cause of action for Melson's conversion." (Strasberg v. Odyssey Group, Inc., supra, 51 Cal.App.4th at p. 917, 59 Cal.Rptr.2d 474.) The Strasberg court distinguished cases in which the plaintiffs "knew about the property in question, knew who held the property, and either had actual knowledge or reason to know the property had been transferred out of the trust to an unauthorized person." (Id. at p. 918, 59 Cal.Rptr.2d 474.) Here, too, plaintiff knew the nature and extent of the property in question, and she knew that the property was in the hands of decedent, with whom she was in a hostile relationship.
"In practical terms, a conversion can only occur after an owner has entrusted his property to another. Thereafter, if the possessor acts in a manner inconsistent with the owner's interests, the owner's cause of action for conversion accrues at that time. [Citation.]" (Naftzger v. American Numismatic Society (1996) 42 Cal.App.4th 421, 428-429, 49 Cal.Rptr.2d 784 [theft of antique coins by substituting inferior ones; held: limitations period did not commence until discovery both of theft and of possessor's identity].)
Here, there is no question that the decedent acted in a manner inconsistent with plaintiffs rights. He refused to permit plaintiff to retrieve some of her property in August 1994, forcing her to enlist the aid of a law enforcement officer to retrieve what she could. The parties' confrontations at that time put plaintiff on notice of the need to protect her property and triggered the running of the statute of limitations as a matter of law. (Naftzger v. American Numismatic Society, supra, 42 Cal.App.4th at pp. 428-429, 49 Cal. Rptr.2d 784.)
Finally, we are not persuaded by plaintiffs argument that the statute of limitations on her claim for conversion was tolled by the mutual restraining order of September 1995. Nothing in the order added to decedent's pre-existing obligation not to convert plaintiffs separate property. Nor did the order in any way prevent plaintiff from seeking the return of her property through any lawful means. (See generally, Hogoboom & King, Cal. Practice Guide: Family Law 1, supra, ¶¶ 1:355-1:357, pp. 1-99 to 1-100.)
In short, plaintiffs cause of action for conversion accrued in August 1994, it was not tolled by the later restraining order, *210 and it expired before she filed this action in July 1999.

III. Sanctions
Defendant has requested this court to consider imposing sanctions for a frivolous appeal. In light of the reversal, that request is "obviously untenable." (In re Marriage of Koester (1999) 73 Cal.App.4th 1032, 1041, 87 Cal.Rptr.2d 76.) Furthermore, defendant failed to make its request by separate motion, as required by the rules of court. (See, Cal. Rules of Court, rule 26(e).)

CONCLUSION
Our conclusions in this case may be summarized as follows:
(1) There is no substantial evidence to support the trial court's finding of laches.
(2) The expenditure of community funds for improvements to decedent's separate real property gave rise to a right of recovery under the Moore/Marsden rule, as extended by Wolfe and Allen. The nature and extent of that recovery will depend on further factual development, for which remand is required.
(3) Plaintiff has failed to prove entitlement to any personal property assets formerly belonging to the community.
(4) Plaintiffs cause of action for conversion of her separate property is timebarred as a matter of law.
(5) Sanctions are not appropriate here.

DISPOSITION
The judgment is reversed, and the cause is remanded to the trial court for further proceedings.
(1) On remand, with respect to the first cause of action of plaintiffs complaint, the trial court shall determine whether the community-funded capital improvements to decedent's separate real property enhanced its equity value.
(a) If the court determines that the improvements did not contribute to equity, then the community is entitled to reimbursement only. In that case, the court shall award plaintiff judgment in the amount of one-half of the community funds spent in capital improvements to decedent's separate property.
(b) If the court determines that the improvements contributed to an increase in the property's equity value, then the community will be entitled to a pro tanto interest in the property. The community interest is calculated by (i) determining the ratio that the community investment bears to the total investment in the property; then (ii) multiplying that ratio by the appreciation in the property's equity value during the marriage, excluding both premarital and post-separation appreciation. In such case, the court shall award plaintiff judgment of one-half of the amount calculated as the community's pro tanto interest.
(2) On remand, with respect to the second cause of action of plaintiffs complaint, the court shall enter judgment for defendant.
Plaintiff shall have costs on appeal.
WE CONCUR: BAMATTRE-MANOUKIAN, Acting P.J, and RUSHING, J.
NOTES
[1] Decedent's separate property declaration, filed in the dissolution action, valued his real property at $10,000 as of July or August 1995.
[2] The separate property interest might also include any post-marital but pre-improvement equity increases, i.e., increases occurring between the date the parties married in 1977 and the date the community began improving the property. We recognize that under the Moore/Marsden rule, apportionment typically begins with the date of marriage. That rule makes sense in the context of monthly mortgage payments, which the community presumably begins making immediately. But in the case of community improvements, which may not begin immediately upon marriage, equity may dictate awarding the separate estate any market appreciation occurring before community improvements actually begin.
[3] Because the record lacks findings as to the amount of the community's capital expenditures, the fair market value of the property when the parties married, or the fair market value of the property at the time of separation, it does not permit computation of the parties' actual respective interests. Nevertheless, for the guidance of the trial court and the parties, we offer the following calculationby way of example onlyto help clarify the elements of the formula as they apply in this case:

I. Ratio:

Total investment: $ 12,500 purchase price
 + $ 37,500 premarital appreciation
 + $ 77,500 community improvements
 ________
 = $127,500 total investment
Separate property: $ 12,500 purchase price
 + $ 37,500 premarital appreciation
 ________
 = $ 50,000 total separate investment
Ratio of separate property interest is $50,000 ÷ $127,500 = 39.22%
Ratio of community property interest is $77,500 ÷ $127,500 = 60.78%
II. Appreciation in Equity
(Equity is fair market value less encumbrances)
Equity at date of separation: $450,000
Less equity at date of marriage: $ 50,000
 _________
Equals appreciation during marriage: = $400,000
III. Value of Community Interest
60.78% share of equity appreciation during marriage
($400,000 X .6078): $243,120
IV. Value of Plaintiffs Interest
One-half of community interest: $243,120 ÷ 2 = $121,560
V. Value of Decedent's Interest
39.22% share of equity appreciation during marriage
$400,000 X .3922): $156,880 (separate interest, equity appreciation)
 + $121,560 (one-half of community interest)
 + $ 12,500 (purchase price)
 + $ 37,500 (premarital appreciation)
 ________
 = $328,440